# Exhibit A

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Jennifer Davlin
23LA0371
St. Clair County
3/28/2023 1:29 PM
22052675

**IN THE CIRCUIT COURT OF ST. CLAIR COUNTY**
**TWENTIETH JUDICIAL CIRCUIT**
**STATE OF ILLINOIS**

KIMBERLY LONG, FERN SCOTT, and
DAWN TRIPLETT,

    Plaintiffs,

v.

WALMART, INC.,
Serve: Registered Agent
   CT Corporation System
   208 SO LaSalle St., Ste 814
   Chicago, IL 60604

    Defendant.

Cause No.: **23LA0371**

**JURY TRIAL DEMANDED**

### COMPLAINT

   COME NOW Plaintiffs, KIMBERLY LONG, FERN SCOTT, and DAWN TRIPLETT (referred to on occasion as "Plaintiffs"), by and through their undersigned counsel, and for their cause of actions against Defendant WALMART, INC., (referred to on occasion as "Defendants") state as follows:

### PARTIES AND JURISDICTION

   1.  Plaintiff KIMBERLY LONG (hereinafter "LONG") is a resident and citizen of the City of Belleville, St. Clair County, Illinois.

   2.  Plaintiff FERN SCOTT (hereinafter "SCOTT") is a resident and citizen of the City of St. Louis, City of St. Louis County, Missouri.

   3.  Plaintiff DAWN TRIPLETT (hereinafter "TRIPLETT") is a resident and citizen of the City of Swansea, St. Clair County, Illinois.

   4.  Defendant WALMART is a Delaware Corporation with a registered office located

at 1530 Wes Highway 50, O'Fallon, Illinois.

5.      The incidents alleged herein occurred in St. Clair County, Illinois.

6.      Venue is proper in Madison County, Illinois pursuant to 735 ILCS 5/2-101.

<div align="center">

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

</div>

7.      On or about July 9, 2022, Plaintiff LONG timely filed – with the with the Illinois Department of Human Rights ("IHDR") and Equal Employment Opportunity Commission ("EEOC") – a charge of discrimination against WALMART on the basis of racial discrimination, age discrimination, and retaliation. A copy of said charge of discrimination is attached hereto, marked as "**Plaintiff's Exhibit 1**," and is hereby incorporated as if fully set forth herein.

8.      On or about September 9, 2022, Plaintiff SCOTT timely filed – with the Illinois Department of Human Rights ("IHDR") and Equal Employment Opportunity Commission ("EEOC") – a charge of discrimination against WALMART on the basis of racial discrimination and retaliation. A copy of said charge of discrimination is attached hereto, marked as "**Plaintiff's Exhibit 2**," and is hereby incorporated as if fully set forth herein.

9.      On or about June 16, 2022, Plaintiff TRIPLETT timely filed – with the with the Illinois Department of Human Rights ("IHDR")) and Equal Employment Opportunity Commission ("EEOC") – a charge of discrimination against WALMART on the basis of racial discrimination, religious discrimination, and retaliation that was later amended on June 23, 2022. A copy of said charge of discrimination is attached hereto, marked as "**Plaintiff's Exhibit 3**," and is hereby incorporated as if fully set forth herein.

10.      The aforesaid charges of discrimination provided the IHDR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be, and is, as broad as the scope of an IHDR

or EEOC investigation that could reasonably be expected to have grown out of the charge of discrimination.

11.     Plaintiff SCOTT received a Notice of Right to Sue letter from the EEOC dated December 30, 2022 and from the IHDR dated February 8, 2023, and this lawsuit is being filed within 90 days of EEOC's issuance of said notice.

12.     Plaintiff LONG received a Notice of Right to Sue letter from the EEOC dated January 14, 2023 and from the IHDR dated February 8, 2023, and this lawsuit is being filed within 90 days of EEOC's issuance of said notice.

13.     Plaintiff TRIPLETT received a Notice of Right to Sue letter from the EEOC dated January 13, 2023 and from the IHDR dated February 8, 2023, and this lawsuit is being filed within 90 days of EEOC's issuance of said notice.

14.     A copy of Plaintiffs' Notice of Right to Sue letters are attached hereto, marked as **"Plaintiffs' Exhibits 4-9,"** and is hereby incorporated as if fully set forth herein.

15.     Plaintiffs have satisfied all private, administrative, and judicial prerequisites to the institution of this action, and this Petition was filed within the applicable time frame from the EEOC's issuance of said notice.

## FACTS COMMON TO ALL COUNTS

16.     Plaintiffs incorporate and adopt by reference paragraphs 1 through 24 as if fully stated herein.

17.     Plaintiffs, by virtue of their race, age, and religion, are members of a class of persons protected by the Illinois Human Rights Act ("IHRA").

18.     Pursuant to 775 5/1-102(A):

It is the public policy of [Illinois] to secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race,

3

color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations.

19.     Pursuant to 775 ILCS 5/6-101(A):

It is a civil rights violation for any employer, employee, agent of any employer, employment agency or labor organization to retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, sexual harassment in elementary, secondary, and higher education, or discrimination based on arrest record, citizenship status, or work authorization status in employment under Articles 2, 4, 5, and 5A, because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act.

**A.     KIMBERLY LONG**

20.     In 2007, Plaintiff LONG was hired by WALMART as an associate and worked at WALMART for 15 years without any complications, problems, issues, or write-ups.

21.     Plaintiff is an African American female and at the time of her hire Plaintiff LONG was 40 years old.

22.     After several years of working for WALMART, Plaintiff LONG was assigned to work in WALMART's Money Center.

23.     Plaintiff LONG's supervisor, Scott Rider (hereinafter "RIDER") was a male, white, Caucasian manager employed by WALMART.

24.     In November 2021, RIDER began to target certain employees, including Plaintiff LONG, and treat Plaintiff's equal counterparts more preferentially compared to Plaintiff.

25.     In November 2021, RIDER told Plaintiff LONG and other targeted employees that they would not receive an employee discount for tardiness or calling off work on Black Friday.

26.     Plaintiff LONG reported RIDER's conduct and comments to WALMART's human

4

resources department.

27.    Immediately following Plaintiff LONG's report of RIDER's conduct and comments, RIDER cut Plaintiff LONG's working hours from 40 hours per week to 28 hours per week.

28.    Plaintiff LONG was advised by other employees that WALMART wanted to cut long-time associate employees and replace them with younger, new hires.

29.    Plaintiff LONG was paid $15.00 per hour after working for the same WALMART location for 15 years and Plaintiff LONG was making the same $15.00 wage that WALMART's younger, new hires started their wages at the beginning of their hire.

30.    Plaintiff LONG immediately reported the wage discrepancy to WALMART's human resources and requested a raise.

31.    Plaintiff LONG was denied a raise and was reprimanded by WALMART.

32.    On or about April 1, 2022, Plaintiff LONG was called into WALMART's office by her direct supervisor regarding a $1,500.00 money order that Plaintiff had printed and was accused of stealing and/or mishandling $1,500.00 and was written up.

33.    On or about April 1, 2022, Plaintiff LONG denied stealing and/or mishandling the $1,500.00 and advised WALMART that a transaction error occurred during the transaction and she was forced to void the transaction and redo the transaction.

34.    On or about April 6, 2022, Plaintiff LONG was called into WALMART's office to discuss Plaintiff LONG being promoted to a team lead position.

35.    On or about April 7, 2022, Plaintiff LONG was called into WALMART's office by her supervisor and was accused a second time of stealing and/or mishandling the $1,500.00 and was ordered to sign the write-up if Plaintiff LONG wanted to be considered for the promotion to

5

team lead.

36.     Plaintiff LONG reported her supervisor's conduct to another Store Manager, Terrance, and team lead, Kamil, and was advised that they would investigate the issues.

37.     On or about April 12, 2022, Plaintiff LONG learned that another younger white, male employee, Zack, had a similar issue in March 2022 and was not written-up for the transaction error and was not reprimanded.

38.     Plaintiff LONG reported her supervisor's conduct to another Store Manager, Eric, after learning about Plaintiff LONG being treated differently by her supervisors and being targeted compared to other employees.

39.     On or about May 14, 2022, Plaintiff LONG was called into WALMART's office by her supervisors, Eric, and Kamil and Plaintiff LONG was again accused of stealing and/or mishandling the $1,500.00 and was told she would no longer work in the money center or work at any cash register.

40.     On or about May 19, 2022, Plaintiff LONG was called into WALMART's office by her supervisors, Eric, and Kamil and accused Plaintiff LONG of giving out extra money and/or stealing money from the registers and was denied access to view any video surveillance footage of Plaintiff LONG stealing the money.

41.     On or about May 19, 2022, WALMART, Plaintiff LONG's supervisors, Eric, and Kamil never called the police regarding the missing $3,000.00.

42.     On or about May 19, 2022, Plaintiff LONG's supervisors, Eric, and Kamil accused Plaintiff of stealing and/or misplacing $3,000.00 and Plaintiff LONG was terminated.

43.     On May 23, 2022, Plaintiff LONG received her final paycheck from WALMART.

44.     Following Plaintiff LONG's termination from WALMART, Plaintiff LONG

6

learned that several other white employees had occurrences where large amounts of money were missing from their cash register drawers and were never written up or reprimanded.

45.    Plaintiff LONG's co-worker, Fern SCOTT, was also terminated by WALMART after she was accused of stealing money and was shown the same stock photo of money balled up in SCOTT's hand and was denied access to the video surveillance footage similar to Plaintiff LONG.

46.    Following her termination, Plaintiff LONG has suffered from emotional distress and financial distress due to the discrimination and retaliation she endured while working at WALMART.

**B.    DAWN TRIPLETT**

47.    In 2007, Plaintiff TRIPLETT was hired by WALMART as an associate and worked at WALMART for 15 years without any complications, problems, issues, or valid write-ups.

48.    Plaintiff is an African American female and at the time of her hire Plaintiff TRIPLETT was 35 years old.

49.    On or about December 18, 2020, Plaintiff TRIPLETT began working as an Optician in WALMART's Vision Department.

50.    On or about January 20, 2021, an older, white, female employee, Diane, threw a box cutter at Plaintiff TRIPLETT and exclaimed "Hey, you can hurt with it!" in front of other employees, including a white, female supervisor, Jana.

51.    Between 2021 and 2022, Plaintiff TRIPLETT was subjected to various racist jokes and unnecessary tension made by Diane and Jana.

52.    Plaintiff TRIPLETT would report each occurrence to her supervisors and her supervisors indicated to Plaintiff TRIPLETT "That's how Diane is" rather than addressing Diane's

7

behavior.

53.     Between 2021 and 2022, Diane would also harass Plaintiff TRIPLETT by taking photographs of Plaintiff TRIPLETT and sending them to Plaintiff TRIPLETT's supervisor, Jana, as an attempt to get Plaintiff TRIPLETT in trouble. Jana would then attempt to write up Plaintiff TRIPLETT for no reason.

54.     Plaintiff TRIPLETT would refuse to sign Jana's write ups.

55.     Between 2021 and 2022, Diane also subjected Plaintiff TRIPLETT to harassment regarding Plaintiff TRIPLETT's religion and devotion to Islamic religious practices.

56.     In early 2022, Diane told Plaintiff TRIPLETT "Muslims are prisoners. My friend is in prison and all the Black people are Muslim."

57.     In March 2022, Plaintiff TRIPLETT set down her phone and Diane picked up Plaintiff TRIPLETT's phone and threw it at Plaintiff. Jana was present during this occurrence and failed to reprimand Diane and told Plaintiff TRIPLETT to "let it go".

58.     Following the March 2022 incident, Jana began to subject Plaintiff TRIPLETT to racial and religious discrimination.

59.     Following the March 2022 incident, Jana made a comment about a foreign, male customer to Plaintiff TRIPLETT and stated to Plaintiff TRIPLETT that the customer was "BLACK Black." Diane later joined and stated to Plaintiff TRIPLETT that "Well, you know what we do with black – we use them until we can't use them no more, then we just throw them away."

60.     Plaintiff TRIPLETT and another black, female employee, Tamika, asked Jana and Diane to cease making comments about Black people in that manner.

61.     Following this incident, Plaintiff TRIPLETT requested a meeting with Jana about Jana's conduct and making Plaintiff TRIPLETT uncomfortable at work and Jana refused to meet

8

with Plaintiff TRIPLETT and told Plaintiff TRIPLETT she was just joking.

62.     In Spring 2022, Diane made a comment to Plaintiff TRIPLETT that a white, male customer, Elgin, only asked to work with Plaintiff TRIPLETT because Elgin "likes mocha" referring to the color of Plaintiff TRIPLETT's skin.

63.     In Spring 2022, Jana made a comment to Plaintiff TRIPLETT that WALMART's Belleville, Illinois store's Vision Center that Plaintiff TRIPLETT should not assist any Belleville store customer's because the manager at the Belleville store's location has a "Black baby daddy."

64.     In Spring 2022, Jana would often invade Plaintiff TRIPLETT's personal space and pat Plaintiff TRIPLETT on the back like a dog. When Plaintiff TRIPLETT complained and asked Jana to stop, Jana cut Plaintiff TRIPLETT's hours.

65.     Plaintiff TRIPLETT complained to another WALMART supervisor, Terrance, and requested more hours and Terrance recommended that Plaintiff TRIPLETT work in the electronics department.

66.     On or about May 11, 2022, Plaintiff TRIPLETT was working in the electronics department by a customer and was asked what was taking so long with his glasses when Plaintiff TRIPLETT advised the customer she would look into it.

67.     On or about May 11, 2022, Plaintiff TRIPLETT asked Diane where the customer's glasses were and Diane threw the glasses at Plaintiff TRIPLETT and the glasses were damaged.

68.     On or about May 11, 2022, Plaintiff TRIPLETT repaired the customers glasses and reported Diane's conduct to the police for assault and WALMART supervisors, including Terrance. The incident was recorded on video surveillance footage and captured the incident, but Diane was not reprimanded.

69.     On or about May 11, 2022, Plaintiff TRIPLETT provided a statement to Terrance

9

about Diane and Jana's conduct and instructed Plaintiff TRIPLETT not to discuss the occurrence as the investigation was ongoing.

70.     On or about May 11, 2022, Plaintiff TRIPLETT no longer felt safe or comfortable working in WALMART's Vision Center and requested that Diane and Jana be transferred.

71.     On or about May 11, 2022, Terrance advised Plaintiff TRIPLETT that she could float around and help different departments compared to transferring Diane and Jana.

72.     On or about May 12, 2022, Plaintiff TRIPLETT wrote a second statement to complain about Diana and Jana's ongoing racial discrimination.

73.     On or about May 13, 2022, Plaintiff TRIPLETT witnessed Diane and Jana discussing the May 11, 2022 incident and Jana attempted to hug Plaintiff TRIPLETT causing Plaintiff TRIPLETT to begin crying. Jana then following Plaintiff TRIPLETT and kept trying to engage Plaintiff TRIPLETT about the pending investigation.

74.     On or about May 13, 2022, Plaintiff TRIPLETT reported Jana's conduct to Terrance and requested to work in a separate department as Plaintiff TRIPLETT could not focus on work and felt uncomfortable.

75.     On or about May 13, 2022, following Plaintiff TRIPLETT's report of Jana's conduct to Terrance, Jana approached Plaintiff TRIPLETT and Tamika and told them to go "find a picture of a sad monkey for Terrance, as that's what he reminds me of and that's what he is." Terrance is a Black employee of WALMART.

76.     On or about May 14, 2022, Plaintiff TRIPLETT was removed, without warning from any supervisor, from WALMART's work scheduled and was originally scheduled to work May 16, 2022 through May 19, 2022.

77.     On or about May 14, 2022, Plaintiff TRIPLETT asked Terrance if she was fired

and Terrance told Plaintiff TRIPLETT she was still employed.

78.     Plaintiff TRIPLETT was only given seven (7) hours of work for WALMART's schedule for May 21, 2022 through May 27, 2022 while Diane was given 31.75 hours that week.

79.     Plaintiff TRIPLETT was removed from WALMART's schedule for May 28, 2022 through June 3, 2022 while Diane was given 36.25 hours that week.

80.     Plaintiff TRIPLETT was only given 22 hours of work for WALMART's schedule for June 4, 2022 through June 10, 2022 while Diane was given 36.76 hours that week.

81.     Plaintiff TRIPLETT never received a conclusion or result regarding WALMART's investigation into Diane and Jana's racial and religious discrimination and Plaintiff TRIPLETT suffered an income loss due to her hours being cut following Plaintiff TRIPLETT's report of Diane and Jana's racial and religious discrimination.

82.     In November 2022, Plaintiff TRIPLETT was terminated from WALMART.

83.     Plaintiff TRIPLETT has suffered from emotional distress and financial distress due to the discrimination and retaliation she endured while working at WALMART.

**C.    FERN SCOTT**

84.     In 2016, Plaintiff SCOTT was hired by WALMART as an associate at a Missouri store in the Money Center and worked at WALMART for 6 years without any complications, problems, issues, or write-ups.

85.     Plaintiff is an African American female and at the time of her hire Plaintiff SCOTT was 25 years old.

86.     In September 2021, Plaintiff SCOTT was transferred to WALMART's O'Fallon, Illinois store location and began working in the Money Center on or about October 15, 2021.

87.     Plaintiff SCOTT was trained by Plaintiff LONG at WALMART's O'Fallon,

11

Illinois store location.

88.     In January 2022, a white, female manager, Rhonda, accused Plaintiff SCOTT of stealing and/or mishandling her cash drawer because Plaintiff SCOTT's drawer was allegedly short by $1,000.00.

89.     Plaintiff SCOTT denied mishandling the money and video surveillance confirmed that Plaintiff SCOTT did not make a mistake or acted fraudulently.

90.     In February 2022, Rhonda accused Plaintiff SCOTT a second time of stealing and/or mishandling her cash drawer because Plaintiff SCOTT's drawer was allegedly short by $2,500.00.

91.     In February 2022, Plaintiff SCOTT denied stealing and/or mishandling her cash drawer because her drawer was not short when she was relieved by one of her white, male co-workers, Josh, that day.

92.     Following the February 2022 incident, Plaintiff SCOTT became aware that Plaintiff LONG was also being accused of stealing and/or mishandling her cash drawer while their white coworkers would cover their breaks and were never accused of stealing and/or mishandling money.

93.     Following the February 2022 incident, Plaintiff SCOTT requested to watch her managers or supervisors, including Rhonda, count her cash drawer to ensure there was no missing money and Plaintiff SCOTT was denied her request.

94.     In March 2022, Rhonda accused Plaintiff SCOTT a third time of stealing and/or mishandling her cash drawer because Plaintiff SCOTT's drawer was allegedly short by $2,500.00.

95.     In March 2022, Plaintiff SCOTT denied stealing and/or mishandling her cash drawer and demanded that Rhonda show Plaintiff SCOTT the video surveillance footage to which Rhonda denied her request.

12

96.     Following the March 2022 incident, Plaintiff SCOTT learned that other WALMART employees accused of stealing and/or mishandling cash drawers were all people of color, including Plaintiff LONG.

97.     Following the March 2022, Plaintiff SCOTT resigned from WALMART due to the continuous racial discrimination she endured and false accusations.

98.     Plaintiff SCOTT has suffered from emotional distress and financial distress due to the discrimination and retaliation she endured while working at WALMART.

## COUNT I – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
*(Long, Scott, & TRIPLETT v. Walmart)*

99.     Plaintiffs incorporate and adopt by reference paragraphs 1 through 97 as if fully stated herein.

100.    That Defendant WALMART had a duty to refrain from Discriminating against an Plaintiffs based on their race, age and/or religion and causing Plaintiff harm.

101.    Discriminating against an individual based on their race, age and/or religion is so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized community.

102.    Defendant WALMART knew, or should have known, that discrimination and/or subjecting an individual to discrimination based on their race, age, and/or religion at work would cause an unreasonable risk of emotional distress.

103.    Defendant WALMART's conduct constituted disregard for Plaintiffs' rights or safety, and its conduct was directed specifically at Plaintiffs based on Plaintiffs' race, age, and/or religion.

104.    As a proximate result of Defendant WALMART's acts or omissions, Plaintiffs suffered severe or extreme emotional distress.

13

105.    As a proximate result of Defendant WALMART's acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages as set forth above.

WHEREFORE, on Count I, Plaintiffs, KIMBERLY LONG, FERN SCOTT and DAWN TRIPLETT, pray for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

### COUNT II – INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS
*(Long, Scott, & TRIPLETT v. Walmart)*

106.    Plaintiffs incorporate and adopt by reference paragraphs 1 through 98 as if fully stated herein.

107.    That Defendant WALMART had a duty to refrain from Discriminating against an Plaintiffs based on their race, age and/or religion and causing Plaintiff harm.

108.    Discriminating against an individual based on their race, age and/or religion is so outrageous in character, and so extreme in degree, that it goes beyond all possible bounds of decency, and is atrocious and utterly intolerable in a civilized community.

109.    Defendant WALMART knew, or should have known, that discrimination and/or subjecting an individual to discrimination based on their race, age, and/or religion at work would cause an unreasonable risk of emotional distress.

110.    Defendant WALMART's conduct constituted disregard for Plaintiffs' rights or safety, and its conduct was directed specifically at Plaintiffs based on Plaintiffs' race, age, and/or religion.

111.    As a proximate result of Defendant WALMART's acts or omissions, Plaintiffs suffered severe or extreme emotional distress.

112.    As a proximate result of Defendant WALMART's acts and omissions, Plaintiffs have in the past and will in the future suffer injuries and damages as set forth above.

14

WHEREFORE, on Count II, Plaintiffs, KIMBERLY LONG, FERN SCOTT and DAWN TRIPLETT, pray for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

15

## COUNT III – AGE DISCRIMINATION: UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF 775 5/1-102(A)
*(Kimberly Long v. Walmart)*

113.    Plaintiff incorporates and adopts by reference paragraphs 1 through 46 as if fully stated herein.

114.    During the course of Plaintiff LONG's employment with WALMART, Defendant subjected Plaintiff to severe and unwelcome conduct based on Plaintiff's age, including, but not limited to, conduct described in this Petition and within Plaintiff LONG's Charge of Discrimination.

115.    At all times relevant herein, WALMART'S age-offensive and age-discriminatory conduct was severe, unwelcome, and objected to by Plaintiff, but said conduct did not cease.

116.    The aforementioned age-offensive and age-discriminatory conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff LONG's position would find Plaintiff LONG's work environment to be hostile and/or abusive.

117.    WALMART knew, or should have known, of the aforementioned age-offensive and age-discriminatory conduct, as Plaintiff expressed her concerns of age discrimination with WALMART supervisors, managers, and other co-workers.

118.    Plaintiff LONG is under information and belief that WALMART has engaged in a pattern and practice of consistently favoring and/or promoting employees that engage in age based harassment, even when said employees have less seniority and less experience.

119.    WALMART failed to exercise reasonable care to prevent and/or promptly correct the aforementioned age-offensive and age-discriminatory conduct, including but not limited to, one or both of the following:

    a.  Failed to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through age discrimination and/or retaliation; and/or

16

b. Failed to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the IHRA.

120.     Plaintiff LONG's age actually played a role in and had a determinative influence in WALMART's disparate treatment of her and the tangible employment actions taken against her, including her termination and involuntarily reducing Plaintiffs' hours.

121.     Plaintiff LONG's age, when reporting the harassment and discriminatory actions taken by WALMART, individually and by and through their agents and employees was, at the very least, a determinative influence in disparate treatment of her and the tangible employment actions taken against her by WALMART, including her termination and involuntarily reducing Plaintiffs' hours.

122.     As such, WALMART violated 775 5/1-102(A).

123.     As a direct and proximate result of WALMART'S actions and/or omissions and violation of 775 5/1-102(A), Plaintiff LONG suffered intentional discrimination – based upon her age, in violation of IHRA – at the hands of WALMART during the course of her employment.

124.     As a direct and proximate result of WALMART'S actions and/or omissions, Plaintiff LONG has been, and continues to be, deprived of monetary and non-monetary benefits.

125.     As a direct and proximate result of WALMART'S actions and/or omissions, Plaintiff LONG has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

126.     By failing to take prompt and effective remedial action with respect to Plaintiff LONG's aggressors and harassers and rather terminating Plaintiff LONG, WALMART, in effect, condoned, ratified, and/or authorized the gender discrimination and retaliation against Plaintiff.

127.     Plaintiff LONG is entitled to recover reasonable attorneys' fees from WALMART under the IHRA.

17

WHEREFORE, on Count III, Plaintiff, KIMBERLY LONG, prays for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

### COUNT IV – RELIGIOUS DISCRIMINATION: UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF 775 5/1-102(A)
*(Dawn TRIPLETT v. Walmart)*

128.    Plaintiff TRIPLETT incorporates and adopts by reference paragraphs 1 through 19 and 47 through 83 as if fully stated herein.

129.    During the course of Plaintiff TRIPLETT's employment with WALMART, Defendant subjected Plaintiff to severe and unwelcome conduct based on Plaintiff's religion, including, but not limited to, conduct described in this Petition and within Plaintiff TRIPLETT's Charge of Discrimination.

130.    At all times relevant herein, WALMART'S religious-offensive and religious-discriminatory conduct was severe, unwelcome, and objected to by Plaintiff TRIPLETT, but said conduct did not cease.

131.    The aforementioned religious-offensive and religious-discriminatory conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff TRIPLETT's position would find Plaintiff TRIPLETT's work environment to be hostile and/or abusive.

132.    WALMART knew, or should have known, of the aforementioned religious-offensive and religious-discriminatory conduct, as Plaintiff TRIPLETT expressed her concerns of religious discrimination with WALMART supervisors, managers, and other co-workers.

133.    Plaintiff TRIPLETT is under information and belief that WALMART has engaged in a pattern and practice of consistently favoring and/or promoting employees that engage in religious harassment and/or discrimination, even when said employees have less seniority and less experience.

18

134.   WALMART failed to exercise reasonable care to prevent and/or promptly correct the aforementioned religious-offensive and religious-discriminatory conduct, including but not limited to, one or both of the following:

    a.  Failed to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through religious discrimination and/or retaliation; and/or

    b.  Failed to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the IHRA.

135.   Plaintiff TRIPLETT's religion actually played a role in and had a determinative influence in WALMART's disparate treatment of her and the tangible employment actions taken against her, including her termination and involuntarily reducing Plaintiffs' hours.

136.   Plaintiff TRIPLETT's religion, when reporting the harassment and discriminatory actions taken by WALMART, individually and by and through their agents and employees, was, at the very least, a determinative influence in disparate treatment of her and the tangible employment actions taken against her by WALMART, including her termination and involuntarily reducing Plaintiffs' hours.

137.   As such, WALMART violated 775 ILCS 5/1-102(A).

138.   As a direct and proximate result of WALMART'S actions and/or omissions and violation of 775 ILCS 5/1-102(A), Plaintiff TRIPLETT suffered intentional discrimination – based upon her religion, in violation of IHRA – at the hands of WALMART during the course of her employment.

139.   As a direct and proximate result of WALMART'S actions and/or omissions, Plaintiff TRIPLETT has been, and continues to be, deprived of monetary and non-monetary benefits.

140.    As a direct and proximate result of WALMART'S actions and/or omissions, Plaintiff TRIPLETT has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

141.    By failing to take prompt and effective remedial action with respect to Plaintiff TRIPLETT's aggressors and harassers and rather terminating Plaintiff TRIPLETT, WALMART, in effect, condoned, ratified, and/or authorized the religious discrimination and retaliation against Plaintiff.

142.    Plaintiff TRIPLETT is entitled to recover reasonable attorneys' fees from WALMART under the IHRA.

WHEREFORE, on Count IV, Plaintiff, DAWN TRIPLETT, prays for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

## COUNT V – RACIAL DISCRIMINATION: UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF 775 5/1-102(A)
*(Kimberly Long, Scott Fern, and Dawn TRIPLETT v. Walmart)*

143.    Plaintiffs incorporate and adopt by reference paragraphs 1 through 98 as if fully stated herein.

144.    During the course of Plaintiffs' employment with WALMART, WALMART subjected Plaintiffs to severe and unwelcome conduct based on Plaintiff's race, including, but not limited to, conduct described in this Petition and within Plaintiffs' Charges of Discrimination.

145.    At all times relevant herein, WALMART'S racially offensive and racially discriminatory conduct was severe, unwelcome, and objected to by Plaintiffs, but said conduct did not cease.

146.    The aforementioned racially offensive and racially discriminatory conduct was

sufficiently severe and/or pervasive that a reasonable person in Plaintiffs' position would find Plaintiffs' work environment to be hostile and/or abusive.

147.    WALMART knew, or should have known, of the aforementioned racially offensive and racially discriminatory conduct, as Plaintiffs expressed their concerns of racial discrimination with WALMART supervisors, managers, and other co-workers.

148.    Plaintiff is under information and belief that WALMART has engaged in a pattern and practice of consistently favoring and/or promoting employees that engage in racial discrimination and harassment, even when said employees have less seniority and less experience.

149.    WALMART failed to exercise reasonable care to prevent and/or promptly correct the aforementioned racially offensive and racially discriminatory conduct, including but not limited to, one or both of the following:

        a.  Failed to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through racial discrimination and/or retaliation; and/or

        b.  Failed to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the IHRA.

150.    Plaintiffs' race actually played a role in and had a determinative influence in WALMART's disparate treatment of Plaintiffs and the tangible employment actions taken against Plaintiffs, including their termination and/or involuntarily reducing Plaintiffs' hours.

151.    Plaintiffs' race, when reporting the racial harassment and discriminatory actions taken by WALMART, individually and by and through their agents and employees, was, at the very least, a determinative influence in disparate treatment of Plaintiffs and the tangible employment actions taken against Plaintiffs by WALMART, including their termination and/or involuntarily reducing Plaintiffs' hours.

152.    As such, WALMART violated 775 ILCS 5/1-102(A).

21

153.    As a direct and proximate result of WALMART'S actions and/or omissions and violation of 775 ILCS 5/1-102(A), Plaintiffs suffered intentional discrimination – based upon Plaintiffs' race, in violation of IHRA – at the hands of WALMART during the course of Plaintiffs' employment.

154.    As a direct and proximate result of Defendant WALMART'S actions and/or omissions, Plaintiffs have been, and continue to be, deprived of monetary and non-monetary benefits.

155.    As a direct and proximate result of Defendant WALMART'S actions and/or omissions, Plaintiffs have suffered, and continue to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

156.    By failing to take prompt and effective remedial action with respect to Plaintiffs' aggressors and harassers and rather terminating Plaintiffs and/or involuntarily reducing Plaintiffs' hours, WALMART, in effect, condoned, ratified, and/or authorized the racial discrimination and retaliation against Plaintiffs.

157.    Plaintiffs are entitled to recover reasonable attorneys' fees from WALMART under the IHRA.

WHEREFORE, on Count V, Plaintiffs, KIMBERLY LONG, FERN SCOTT and DAWN TRIPLETT, pray for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

### COUNT VI – RETALIATION: UNLAWFUL EMPLOYMENT PRACTICES IN VIOLATION OF 775 ILCS 5/6-101(A):
*(Kimberly Long, Scott Fern, and Dawn TRIPLETT v. Walmart)*

158.    Plaintiffs incorporate and adopt by reference paragraphs 1 through 157 as though fully set out herein.

159.    As outlined in this Petition, Plaintiffs engaged in protected activities, including, but not limited to, making a verbal complaints against Plaintiffs' aggressors and harassers to WALMART's management, filing a complaint with the Illinois Department of Human Rights against WALMART and filing a Charge of Discrimination with the EEOC and ICHR against WALMART based on the discrimination against Plaintiffs based on Plaintiffs' race, age, and religion.

160.    Plaintiffs were subjected to further outrageous, extreme, atrocious, intolerable, severe, and pervasive discrimination based on Plaintiffs' race, age, and religion subsequent to reporting Plaintiffs' aggressors and harassers' behavior and conduct to WALMART management.

161.    As a result of Plaintiffs' attempts to protect Plaintiffs' rights under the IHRA, as outlined herein, Plaintiffs suffered adverse employment actions, as alleged in this Petition and within Plaintiffs' Charges of Discrimination.

162.    Plaintiffs' attempts to protect her rights under the IHRA actually played a role in and had a determinative influence in the adverse employment actions suffered by Plaintiffs, as outlined herein and within Plaintiffs' Charges of Discrimination.

163.    Through WALMART's conduct, as described herein and within Plaintiffs' Charges of Discrimination, WALMART violated 775 ILCS 5/6-101(A).

164.    As a direct and proximate result of WALMART's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, and, in violation of 775 ILCS 5/6-101(A), Plaintiffs suffered intentional discrimination by WALMART and retaliation at the hands

of and by WALMART during Plaintiffs' employment with WALMART.

165.    As a direct and proximate result of WALMART's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, Plaintiffs have been, and continue to suffer monetary and non-monetary damages.

166.    As a direct and proximate result of WALMART's actions and/or omissions, as outlined herein, Plaintiff has suffered a garden variety emotional distress and other compensatory damages.

167.    By failing to take prompt and effective remedial action with respect to Plaintiffs' aggressors and harassers, WALMART effectively condoned, ratified, authorized, aided, abetted, incited, compelled, and/or coerced and/or attempted to do so the discrimination against Plaintiffs based on Plaintiffs' race, age, religion and retaliation against Plaintiffs.

168.    Plaintiffs are entitled to recover reasonable attorneys' fees from Defendant WALMART, as provided for under the IHRA.

WHEREFORE, on Count VI, Plaintiffs, KIMBERLY LONG, FERN SCOTT and DAWN TRIPLETT, pray for judgment against Defendant, WALMART, in a sum in excess of $50,000.00, and for other such relief that this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all counts alleged herein.

Respectfully submitted,

**ONDER LAW, LLC**

By: /s/ *Breanna L. Flowers*
W. Wylie Blair, # 06285762
Breanna L. Flowers, #6334130
110 East Lockwood Avenue
St. Louis, MO 63119
Tel:     (314) 963-9000
Fax:     (314) 963-1700
blair@onderlaw.com
hunt@onderlaw.com

25

DocuSign Envelope ID: AA0658A8-8432-441D-8910-DED9DA2F4CA8

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.

ENTER CHARGE NUMBER
□ FEPA
□ EEOC

### ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

| NAME | Date of Birth | HOME TELEPHONE NO. (Include Area Code) |
|---|---|---|
| Kimberly Long | 05/24/1982 | (618) 531-7140 |

| Street Address | City, State and Zip Code | County |
|---|---|---|
| 30 Kinney Drive | Belleville, IL 62221 | USA |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME | NO. OF EMPLOYEES/MEMBERS | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| Walmart Associates, Inc. | Over 500 | (618) 632-9066 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1530 W Highway 50 | O'Fallon, IL 62269 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
|  |  |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
|  |  |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE   □ COLOR   □ SEX   □ RELIGION

□ NATIONAL ORIGIN   ☒ RETALIATION   ☒ AGE

□ DISABILITY   □ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE (Month, day, year)
November, 2021 – May, 2022
☒ CONTINUING ACTION



**EXHIBIT**

1

DocuSign Envelope ID: AA0658A8-8432-441D-8910-DED9DA2F4CA8

My name is Kimberly Long and I have worked at Walmart Associates, Inc. since 2007. Most recently I was assigned to the Money Center.

I am African American and I just turned 40 years old. I have been fiercely loyal, working for Walmart over the past 15 years. I started in the deli, and worked my way up to the front end, then finally the money center. I stayed overtime whenever we were short-staffed and I was helpful to all customers. I enjoyed my work and didn't have any problems, issues, or write-ups for over a decade.

Things changed in November of 2021. Caucasian store manager Scott Rider told associates there would be no employee discount for tardiness or call-ins on Black Friday. I was upset by this, and I also noticed Scott was treating certain employees preferentially, so I called ethics. In direct retaliation, my hours were cut from 40 to 28 and I was pointed. My team lead had to adjust it, but only much later.

I also noticed that new associates were treated well, but those of us who'd been at Walmart a long time were being picked on. Rumors were spreading that Walmart wanted to cut long-time associates in favor of young, new hires.

I had been at this same store for 15 years, and was only being paid $15/hour, the same as new hires. So I went to my team lead and asked for a raise. HR told my lead to put in a ticket. I never got the raise, but I did get trouble.

On April 1st, I was called to the office by my team lead regarding a $1,500 money order I had printed. Rhonda in accounting had claimed my drawer came up short. I explained the money order machine ran out of paper money orders, so I had to reload it in the middle of a transaction. This messed up the printing. The first money order printed ok, but not the second. I followed the prompts to void both orders, so I could refill the machine and start the entire transaction over. I didn't want to give the customer any inactive money orders. I put the inactive voided money orders in the account bag.

My lead insisted the drawer was $1,500 short, and I didn't understand how this was possible. Eventually she surmised that the computer system didn't catch up, logging the cash register as short. I reminded her that I didn't have anything to do with Walmart systems being slow, yet I still received a write-up. I refused to sign it, because I hadn't done anything wrong. I felt singled-out. Surely this wasn't the first time there was an issue with the printer.

On April 6th, the team lead pulled me into the office to talk with me about a team lead position on the front end. She thought I would be a good fit for the position. She helped me put in my requisition successfully and told me she would give me a good reference. I was filled with hope and pride at the prospect of a long-deserved promotion.

But those feelings of elation didn't last long. The next day, my team lead called me into the office again about the money order situation. She said I still needed to sign the write-up and take the yellow coaching for something that I didn't do. I was upset and started to wonder if her previous offer for a promotion was real. I still refused to sign the write-up, and I went to Store Manager Terrance to report what was going on. He told me he would investigate. I also reported the incident to team lead McKailin. She was

DocuSign Envelope ID: AA0658A8-8432-441D-8910-DED9DA2F4CA8

confused why they were even making this an issue...all they needed to do was call Moneygram to fix and verify things.

I felt like I was being set up. Then on April 12th, I spoke with my coworker Zack about what happened. He told me that the exact same printer issue had happened to him in March, but he didn't receive a write-up...not even a coaching. Zack happens to be white and much younger than I.

I was told that because I would not sign the write-up, I was out of the running for the team lead position. This made me extremely upset, so I filed a complaint with Coach Eric.

On May 14th, I was called to the office by my team lead. Eric and McKailin were also there.. Eric told me that Jim from accounting said that I couldn't work in the money center or run any cash register anymore. They showed me a picture of money balled up in what accounting claimed was my hand. I didn't recall having money in my hand or a photo taken, and I felt ambushed. I was then told I could only work in self-check or carts.

On the afternoon of May 19th, I texted my cousin Dawn Triplett who also worked at the same Walmart. She had been experiencing similar discriminatory issues. I told her I had been asked to go to the manager's office, and I felt like I was about to be fired.. When I arrived at the office, Jim, Eric, and my team lead were present. Eric showed me photos of transactions completed under my operator number. I was accused of giving extra money out. I asked to see video footage of me allegedly giving out extra money, but they would not show me. Allegedly an accounting partner witnessed me.

I was told my drawer had shortages of up to $3,000. I responded that I had never turned in a short drawer without an explanation. I was always transparent when there were discrepancies. Eric told the others this was true...that I always counted my drawer. So then accounting changed tactics, and claimed I wasn't following my Walmart teachings...I didn't know what "teachings" were being referred to, as I wasn't given any specifically.

Ignoring my protests, Walmart said that instead of calling the police, I was just fired. I don't think anybody was actually going to call the police, because everyone in the room knew no crime was committed...but they threatened me to scare me, and it worked.

I handed Eric my badge and discount card. I asked him for my last paycheck, which is normally handed to an employee when terminated. They told me my check wasn't ready and I would get a call. I finally got my check on May 23rd and was told it had been waiting for me since the 19th when they fired me. This felt like retaliation and mental games, because I had originally been told I could not have the check that day.

**Here are some specific examples of other employees in my position who have had short drawers, but did not get coaching, write-ups, or termination. They are all white.**

-Rebecca S did an over-the-phone transaction for over $5,000 but nothing happened to her. This amount is over Walmart's policy.

DocuSign Envelope ID: AA0658A8-8432-441D-8910-DED9DA2F4CA8

Joe S.  He told me his drawer was $3,000 short for cashing a check, but nothing was said to him.

Shirley M. She has made numerous mistakes.  She was short $2,500 in money center transactions, and actually cashed a check for $1,000.

Coincidentally (or not) I later learned my former black co-worker Fern was recently fired for allegedly mishandling money. Fern was apparently shown a picture of money balled up in her hand, (I am guessing the same stock photo I was shown) and when she pressed supervisors to see the video, they wouldn't show either.

After giving fifteen years of my life to Walmart, they thanked me by falsely accusing me of theft and taking away my income.  It was embarrassing and financially painful for me.

I have been harassed and discriminated against based on my race and age. After reporting the harassment, I was retaliated against and terminated. But I am hopeful that we can come to some sort of resolution with the company and make positive changes going forward.

I am represented by the following Counsel:

Lauren Sierra Kruskall
Attorney at Jungle Law
2300 Main St, #900
Kansas City, MO 64108
c. #816-944-3680
f.  #816-448-3101

| | |
|---|---|
| [X] I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements)<br><br>_____, I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>7/9/2022<br>_____<br>Date         Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month and year)     7/9/2022 |

DocuSign Envelope ID: 33BF0BD6-8869-4B19-8FC5-312B23C3D195

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form | ENTER CHARGE NUMBER<br>☐ FEPA<br>☐ EEOC |
|---|---|

### ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

| NAME<br>Fern Scott | | Date of Birth<br>05/13/1997 | HOME TELEPHONE NO.<br>(Include Area Code)<br>(314) 285-2817 |
|---|---|---|---|
| Street Address<br>3920 Council Grove | | City, State and Zip Code<br>Saint Louis, MO 63120 | Country<br>USA |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME<br>Walmart Associates, Inc. | NO. OF EMPLOYEES/MEMBERS<br>Over 500 | TELEPHONE NUMBER (Include Area Code)<br>(618) 632-9066 |
|---|---|---|
| STREET ADDRESS<br>1530 W Highway 50 | CITY, STATE AND ZIP CODE<br>O'Fallon, IL 62269 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE (Month, day, year)<br>January 2022 – March, 2022<br>☒ CONTINUING ACTION |
|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION<br>☐ NATIONAL ORIGIN   ☒ RETALIATION   ☐ AGE<br>☐ DISABILITY   ☐ OTHER (Specify) | |



EXHIBIT
2

DocuSign Envelope ID: 33BF0BD6-8869-4B19-8FC5-312B23C3D195

My name is Fern Scott. I worked at Walmart Associates, Inc starting in September 2016. I am African American.

I had worked for several years at Missouri Walmart money centers, but when I transferred to Illinois in September of 2021, I didn't start in the money center until October 15th. I was trained by Kimberly Long, who is also African American.

I didn't have any issues until January of 2022. This is when Caucasian cash office manager Rhonda claimed my drawer was short by $1,000. We had just done an audit, so I didn't understand how my drawer could be short. I was pulled into the office. I told them it was a mistake.

There are always cameras on us, and I was shown the video from the time in question. It was clear there were no mistakes and no one, including myself, was doing anything fraudulently.

About a month later, Rhonda again accused me of having a drawer short by $2,500. I didn't understand, as I didn't turn in a short drawer and I had been counting meticulously and slowly. My Caucasian coworker Joe had relieved me for a break that day, and the drawer wasn't short when he took over.

Kimberly also had issues with allegations made by Rhonda about a short drawer. We both noticed we were being accused when caucasian co-workers like Joe and/or Rebecca would cover our breaks.

I tried to watch my managers count my drawer at the end of my shifts to verify I was correct, but some of them, like Rhonda, would shoo me away and not allow me to watch. This also made me uncomfortable, especially when I was being accused by them of a short drawer.

In March, I was again accused by Rhonda of being $2,500 short. I asked Rhonda how I could possibly be short, and she just laughed. She refused to let me see the video footage. She treated me as if I was illiterate and stupid. In my previous tenure as a money center cashier in Missouri, I was never accused of stealing and I never had issues with a short drawer.

It was clear to me that the majority of people who were accused of short drawers/stealing were people of color. I could see where this was heading, and I was so uncomfortable, I resigned.

Store manager Anita tried to get me to come back, but I told her I didn't want my job back after being accused of stealing multiple times. She claimed she knew nothing about the accusations, which was illogical, as the store manager would be aware if thousands of dollars were supposedly missing.

I have been harassed and discriminated against based on my race. After reporting the discrimination, I was retaliated against and constructively discharged. But I am hopeful that we can come to some sort of resolution with the company and make positive changes going forward.

I am represented by the following Counsel:

Lauren Sierra Kruskall

DocuSign Envelope ID: 33BF0BD6-8869-4B19-8FC5-312B23C3D195

Attorney at Jungle Law
2300 Main St, #900
Kansas City, MO 64108
o. #816-448-3107
f.  #816-448-3101
c. #816-944-3680

| | |
|---|---|
| ☒ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements)<br><br>_____I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>DocuSigned by:<br>_Fern Scott_<br>Charging Party Signature)<br>B1475056F155480<br><br>Date<br>9/9/2022 | SIGNATURE OF COMPLAINANT<br><br>DocuSigned by:<br>_Fern Scott_<br>B1475056F155480<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month and year)          9/9/2022 |

DocuSign Envelope ID: 3AA37494-92C7-4FFC-A523-7809319BD37D

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form. | ENTER CHARGE NUMBER<br>□ FEPA<br>□ EEOC |
|---|---|

### AMENDED ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

| NAME<br>Dawn Triplett | Date of Birth<br>(Include Area Code)<br>05/26/1987 | HOME TELEPHONE NO.<br>(Include Area Code)<br>(618) 223-4077 |
|---|---|---|

| Street Address<br>1710 Baxston Court | City, State and Zip Code<br>Swansea, IL 62226 | County<br>USA |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below).

| NAME<br>Walmart Associates, Inc. | NO. OF EMPLOYERS/MEMBERS<br>Over 500 | TELEPHONE NUMBER (Include Area Code<br>(618) 632-9066 |
|---|---|---|

| STREET ADDRESS<br>1530 W Highway 50 | CITY, STATE AND ZIP CODE<br>O'Fallon, IL 62269 |
|---|---|

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es) | DATE DISCRIMINATION TOOK PLACE (Month, day year)<br>December, 2020 - Present |
|---|---|
| ☒ RACE   □ COLOR   ⌐ SEX   ☒ RELIGION | ☒ CONTINUING ACTION |
| □ NATIONAL ORIGIN   ☒ RETALIATION   □ AGE | |
| □ DISABILITY   □ OTHER (Specify) | |

**EXHIBIT**

3

DocuSign Envelope ID: 3AA37494-92C7-4FFC-A523-7809319BD37D

My name is Dawn Triplett and I have worked for Walmart Associates, Inc. since April 10, 2007.  I started as an Optician in the Vision Department on December 18, 2020. The vision department was hard for me to get accepted into, so I was very pleased when it finally happened.

I am of mixed race, including African-American.

On Wednesday, January 20, 2021, I used a boxcutter to open a box and then unloaded the box.  I hadn't put the boxcutter away yet, when an older white employee named Diane picked up the boxcutter and threw it at me.  She exclaimed, "Hey, you can get hurt with it!"  I didn't report Diane because other employees, including supervisors, saw what happened.  But nobody said anything. Not knowing what to do, I let it go.

Over the course of the next year, Diane made various racist jokes and created unnecessary tension.  When I reported Diane, I was told, "That's how Diane is," excusing her behavior instead of addressing it.

I enjoyed my job, and I had worked hard to get it, so I tried to ignore Diane the best I could.  But then, Diane would take pictures of me and send them to our supervisor Jana.  She was trying to get me into trouble so I would not be able to work with her in the department any longer.

Jana tried to write me up for whatever reasons Diane tried to create, but I refused to sign the write-ups.  Jana and Diane had worked together a long time, and seemed to have the same beliefs about things.  Jana chose to ignore Diane's frequent, racist comments.

Diane knows that I study Islam, and brings it up to me in a negative way almost daily.  When I greet another Muslim employee, Diane will say "Muslims are prisoners. My friend is in prison and all the Black people are Muslim."

Sometime in March of 2022, I set down my Android phone and Diane threw it at me. Jana witnessed this, but did not react at all.  I reminded Jana this was the second time Diane threw something at me...the first time it had been a knife.

Jana talked to Diane about it.   Diane apologized to Jana, but not to me. I was super upset and just stood quietly thinking about what to do. Jana baited me, "She apologized, (to me) so aren't you going to let it go?"

Jana started in on the racist commentary.  One day, a man from Sudan or Somalia who had very dark skin came inside Walmart.  He stood in the bank line, which was quite long that day. Jana said, "He's BLACK black." Diane chimed in, "Well, you know what we do with black – we use them until we can't use them no more, then we just throw them away."

My Black co-worker Tamika and I immediately both told Diane and Jana to cease talking about Black people in that way.

I asked Jana for a meeting about it, but she refused. Jana said she wasn't a racist and she had just been joking around.  I said it wasn't a joke, and she has made my co-workers and I uncomfortable.

It didn't matter.   Jana and Diane seemed to take pleasure in the fact that we were upset.   They

DocuSign Envelope ID: 3AA37494-92C7-4FFC-A523-7809319BD37D

increased their racist comments about Blacks, muslims, who they assumed were all muslims, poor, prisoners and on food stamps.

One day Diane was talking about a patient named Elgin. Elgin is a white man who is very kind. Diane claimed Elgin specifically asks for me to work with him, because "he likes mocha" referring to the color of my skin. Taken aback, I responded, "No, he likes me because I'm friendly, I have a pretty smile, and I am nice." I told Diane that I have a lot of patients who ask for me because of my demeanor, not because of my skin color.

Diane is not nice to Elgin, or other patients, which is probably why they don't want to work with her. Diane claimed that Elgin drove a Hummer, but he has Medicaid, so he must be gaming the system.

Jana often discredits the Belleville store's vision center to us. She doesn't like the manager Sam, and frequently reminds us that Sam's baby daddy is Black. Jana specifically told us to not do any refunds, replacements, or anything for Belleville patients.

Both Diane and Jana have also discriminated specifically against Medicaid recipients. They claim we can't book more than four Medicaid patients per day, and we have to turn them away for replacement glasses when they ask. We are also not allowed to give them free eyeglass cleaning kits.

Jana would often invade my personal space and pat me on the back like a dog. I told her to stop touching me like that because it made me feel like a dog. She keeps doing it. When I complain, it encourages her to do things more often.

After I complained, Jana cut my hours. I asked Terrance for more hours, and he said I could work in electronics.

On May 11th I was working in the electronics department. My patients know me well by now, and one of them named Scott Rogers asked if I could see what's up with his glasses. I said I would check for him. I asked my coworker Jackie, because Scott had been waiting on them a long time. Jackie said Diane was still working on them. So I went to the lab with Tamika to check. I noticed one of his screws was lost, and we were going to be responsible for it.

I asked Diane how she was doing and if she wanted me to try working on Scott's glasses. Diane threw the glasses at me, and I had to duck to avoid being hit. As a result, the glasses hit a hard surface and chipped. I fixed them promptly for Scott, and then I called the police. I told them I was assaulted. I also told Terrance the store manager, and other managers under him. They watched security footage of the incident, which Diane admitted to, but Diane tried to claim she hadn't thrown them that hard.

Tamika and I both made statements. I gave mine to Terrance, store lead Aimee, coach Shanna, as well as manager Anitra. I was told I couldn't say anything to anyone, as an investigation was ongoing. Terrance called Jana into his office. She was crying at the time.

I no longer felt comfortable working in vision. Terrance said I could float around and help where needed. I liked the vision center, so why did I have to move? What about Diane and Jana?

On May 12th I again worked in electronics. I wrote a second statement about the on-going racial

DocuSign Envelope ID: 3AA37494-92C7-4FFC-A523-7809319BD37D

discrimination by both Diane and Jana.

On May 13th I went to clock in.  Jana and Tamika were discussing the investigation, even though Terrace told us not to.  I got emotional and Jana claimed she was sorry.  She tried to hug me, but I didn't want her to touch me and I started crying.  I witnessed Jana then tell a patient to wait, because she was more interested in discussing the investigation than helping customers.  I went to the lab to dab my eyes so I could work, and Jana followed me and kept trying to engage me about the investigation, and I told her to stop.  She wanted me to re-enact when Diane threw the glasses at me.

I told Terrance that Jana was trying to talk to me about the investigation and she wouldn't let me get to work.  I asked to go home.  I needed the hours, so I ended up working in Lawn & Garden that day.

Jana got upset when Terrance approached her.  Afterwards, she found Tamika and I.  She told us to "find a picture of a sad monkey for Terrance, as that's what he reminds me of and that's what he is."  Terrance is Black.

On May 14th I was notified through my app that I was removed from the following week's schedule. I was supposed to work Monday-Thursday, May 16th – 19th.  No one said a word to me about the removal. Diane was still on the schedule.

I went to talk to Terrance. I asked if I had been fired. He said no.

The following schedule was for May 21st – 27th.  I was given only seven hours, while Diane had 31.75. Then on May 28th -June 3rd, I was completely off the schedule, while Diane had 36.25 hours. Then on June 4th -10th, I was given 22 hours, while Diane got 36.76.

I am embarrassed and hurt. I've worked for Walmart for a long time and I am a team player, so much so that I've been helping in other departments even though I don't have to. But I was forced out of the position I worked so hard to achieve, and nothing happened to my co-worker Diane.

I have been discriminated against based on my race and religion. After reporting the harassment, I was retaliated against and my hours were cut. But I am hopeful that we can come to some sort of resolution with the company and make positive changes going forward.

I am represented by the following Counsel:

Lauren Sierra Kruskall
Attorney at Jungle Law
2300 Main St, #900
Kansas City, MO 64108
o. #816-448-3107
f. #816-448-3101
c. #816-944-3680

DocuSign Envelope ID: 3AA37494-92C7-4FFC-A523-7809319BD37D

| | |
|---|---|
| [X] I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) _____ I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>6/23/2022<br><br>Date<br><br>DocuSigned by: *Dawn Tripplett*<br>779AEFAE441746D... (Signature) | SIGNATURE OF COMPLAINANT  DocuSigned by: *Dawn Tripplett*<br>779AEFAE441746D...<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month and year)    6/23/2022 |



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

St. Louis District Office
1222 Spruce St. Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

### DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/30/2022

**To:** Fern Scott
3920 Council Grove
Saint Louis, MO 63120

Charge No: 560-2023-00168

EEOC Representative and email:     Brenda Rutledge
Investigator Support Assistant
brenda.rutledge@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 560-2023-00168.

On behalf of the Commission,

**LEATHA**    Digitally signed by
LEATHA JOHNSON
**JOHNSON**    Date: 2022.12.30
10:19:48 -0500'
For David Davis
Acting District Director



**EXHIBIT**
14

**Cc:**
Scott Forman
Walmart c/o Littler Mendelson
2300 MCGEE ST STE 800
Kansas City, MO 64108

Shea Lukacsko
Walmart Associates, Inc. c/o Littler Mendelson, P.C.
2301 MCGEE ST STE 800
Kansas City, MO 64108

Lauren S. Kruskall
Jungle Law
2300 Main St.   #900
Kansas City, MO 64108


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 560-2023-00168 to the District Director at David Davis, 1222 Spruce St Rm 8 100

St Louis, MO 63103.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

STATE OF ILLINOIS    )
                     )  ss
COUNTY OF COOK       )                         CHARGE NO. 2023SR0721

### AFFIDAVIT OF SERVICE

. . . . . . Part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

NOTICE OF DISMISSAL AND ORDER OF CLOSURE . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B . . . m 555 . . . West Monroe . . Street, Chicago, . . . Illinois, . . . . . . . . . .

by FIRST CLASS MAIL, address as . . follows:


For Complainant                        For Respondent

Warren S. Krusall                      Scott Forman
. . . . . . . . .                      Littler Mendelson
1500 Main St.                          2301 McGee St.
Suite 800                              Suite 800
Kansas City, MO 64108                  Kansas City, MO 64108


. . . . . . as permitted by law pursuant to Section 1-109 of the Code of Civil Pro . . . .
. . . . . certify that the statements set forth in this instrument are true and correct . . .
. . . . . . . . . . . upon information and belief and as to such matters the undersigned . . . . .
a . . . . . . . . . . . . . . . . . . be true.

                                       Christina P. . . .

### PLEASE NOTE:

The undersigned . . . which is filed on behalf . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . of Human Rights . . shall file no . . . . . . . . . . . . . . . . . . . . .
. . . ings concerning Notice of Dismissal or Order of Closure that . . . . . . . .

**EXHIBIT**
**5**

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:

FERN SCOTT

                   COMPLAINANT    CHARGE NO.    2021SR???

AND

WALMART ASSOCIATES, INC.

                   RESPONDENT.

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE**
**AND ORDER OF CLOSURE**

For Complainant

Lauren S. Kruskall
Jungle Law
2300 Main St.
Suite 900
Kansas City, MO 64108

For Respondent

Scott Forman
Littler Mendelson
2301 McGee St.
Suite 800
Kansas City, MO 64108

DATE OF DISMISSAL: February 8, 2023

1.      YOU ARE HEREBY NOTIFIED that the Department has not received a timely request to review the EEOC determination of no cause, a copy of which is enclosed. Based upon the enclosed determination, the DEPARTMENT OF HUMAN RIGHTS (DHR) finds that there is NOT substantial evidence to support the allegations of the charge(s). Accordingly, pursuant to Section 7A-102(A-1) (3)(a) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II, Section 2520.560), the charge is HEREBY DISMISSED and CLOSED.

2.      Complainant may commence a civil action against Respondent in the appropriate state circuit court or other appropriate court of competent jurisdiction within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately: EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.      Complainant is hereby notified that the charge(s) are dismissed with prejudice with no right to further proceed if a timely written complaint is not filed with the appropriate circuit court.

DEPARTMENT OF HUMAN RIGHTS

EEOC Re-Chg (CR)
SR1 Rev. 07.2021



ILLINOIS DEPARTMENT OF

# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

February 1, 2023

FERN SCOTT
C O LAUREN S KRUSKALL
JUNGLE LAW
2300 MAIN ST , STE 900
KANSAS CITY  MO  64108

RE:   Charge No   2023SR0721
      Respondent: WAL MART ASSOCIATES INC
Complaint or Civil Action Filing Dates:   December 30, 2023 through March 28, 2024

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ("EEOC") investigated by the Illinois Department of Human Rights ("IDHR") under the Illinois Human Rights Act.  IDHR has received a copy of EEOC's determination and your request for the Department to investigate.  A copy of the charge has been served on the Respondent.  Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats pertaining to this charge.  If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition.  If we do not have copies of these documents in your file, we have included copies with this notice.

1)     Verification of Disability.
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)     Consent form.
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned.  IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

If IDHR does not complete the investigation of your case by timely issuing its report of findings, you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days (or the extended time). We have calculated the time above (see Complaint or Civil Action Filing Dates). While we have made this calculation with the best of intentions, errors can occur. The Human Rights Commission has ruled that it is your responsibility to count the number of days properly. If you file a complaint or commence a civil action in circuit court outside this 90-day period, your complaint or civil action may be deemed untimely and dismissed.

Once 455 days (365 days (or the extended time) plus 90 days) have passed, IDHR must dismiss your charge with prejudice without any further right to proceed if you have not filed a complaint with the Human Rights Commission, or commenced a civil action in the appropriate court. Therefore, you may wish to contact an attorney to decide the best way for you to handle your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with section 7A-102(F) of the Human Rights Act. You must serve a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the Illinois Code of Civil Procedure. Please also serve a copy of your complaint on the EEOC, 500 West Madison Street, Suite 2000, Chicago, IL 60661. If you file a complaint with the Commission, you may not later commence a civil action in circuit court.

You must advise IDHR of all changes of name, address, or telephone numbers. If you do not do so, IDHR may dismiss your case if it cannot locate you.

12/11/22 Pri L Non Med
CR/SR
4:17

DocuSign Envelope ID: 33BF3BD6-8869-4B16-8FC5-312F23C3D195

Received in EEOC on 9/9/22

## CHARGE OF DISCRIMINATION

ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

Name
Lora Scott

Date of Birth
05/13/1997

3920 Council Grove

Saint Louis, MO 63120

USA

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

| Name | No. of Employees | Phone |
|---|---|---|
| Walmart Associates, Inc. | Over 500 | (618) 632-9600 |
| 1530 W Highway 50 | O'Fallon, IL 62269 | |

| RACE | SEX | RELIGION |
| NATIONAL ORIGIN | RETALIATION | AGE |
| DISABILITY | OTHER (Specify) | |

EARLIEST / LATEST DATE

My name is Kerri Scott. I worked at Walmart Associates Inc starting in September 2016.   I am African American

I had worked for several years at Missouri Walmart money centers, but when I transferred to Illinois in September of 2021, I didn't start in the money center until October 18th. I was trained by Kimberly Long, who reports also African American.

I didn't have any issues until January of 2022. This is when Cawanson cashier officer/manager/Rhonda claimed my drawer was short by $1200. We had just done an audit, so I didn't understand how my draw could be short. I was pulled into the office. I told them it was a mistake.

There are always cameras on us, and I was shown the video from the time in question. It was clear there were no mistakes and no one, including myself, was doing anything improperly.

About a month later, Rhonda again accused me of having a drawer short by $2,200. I didn't understand as I didn't turn in a short drawer, and I had been counting meticulously and slowly. My Cawanson co-worker Joe had relieved me for a break that day, and the drawer wasn't short when he took over.

Kimberly also had issues with allegations made by Rhonda about a short drawer. We both noticed we were being accused when caucasian co-workers like Joe and/or Rebecca would cover our breaks.

I tried to watch my managers count my drawer at the end of my shifts to verify it was correct, but some of them, like Rhonda, would shoo me away and not allow me to watch. This also made me uncomfortable especially when I was being accused by them of a short drawer.

In March, I was again accused by Rhonda of being $2,500 short. I asked Rhonda how I could possibly be short, and she just laughed. She refused to let me see the video footage. She treated me as if I was dishonest and stupid. In my previous career as a money center cashier in Missouri I was never accused of anything, and I never had issues with a short drawer.

It was clear to me that the majority of people who were accused of short drawers/stealing were people of color. I could see where this was heading, and I was so uncomfortable, I resigned.

Store manager Anita tried to get me to come back, but I told her I didn't want my job back after being accused of stealing multiple times. She claimed she knew nothing about the accusations, which was illogical, as the store manager would be aware if thousands of dollars were supposedly missing.

I have been harassed and discriminated against based on my race. After reporting the discrimination, I was retaliated against and constructively discharged. But I am hopeful that we can come to some sort of resolution with the company and make positive changes going forward.

I am represented by the following Counsel:

Lauren Davis Kaskaff

DocuSign Envelope ID: 33BF6BD6-8589-4819-8FC5-312B23C3D195

Attorney at jungle Law
2300 Main St. #900
Kansas City, MO 64108
p: #816-448-3107
f: #816-448-5101
c: #816-914-5050

| | | |
|---|---|---|
| Fern Scott | Fern Scott | |
| 3/6/2022 | | 9/7/2022 |

Charge Number: 2023SR0723            Complainant: FERN SCOTT

Respondent: WAL MART ASSOCIATES INC

## COMPLAINANT QUESTIONNAIRE

In order to assist the IDHR in investigating your charge, please complete and return the following questionnaire to the IDHR within 30 days of the date you received this questionnaire.

- If you are represented by an attorney, consult with your attorney prior to completing this questionnaire.
- Provide your answers on a separate sheet of paper. Identify the question number for each response. Use additional sheets as necessary.
- If you are not sure of the answer to any question, you may leave the question blank and the investigator will follow up with you at a later time.

Provide a copy of any documents (such as letters, journals, emails, or other evidence), which relate to the charge allegations.

1.     Provide information about Respondent:
    a.     State the full legal name(s) (as identified on your W-2 form);
    b.     Address of Respondent;
    c.     Briefly Describe the type of work carried on by Respondent at this address.

2.     On what date did you start working for Respondent?

3.     Who hired you? Give name, job title, Race.

4.     Please list in chronological order each position you held at the Respondent and the date you started in that position.

5.     What were the job duties in the position you held on the date of the incident? Please include a job description if you have one.

6.     Who was your immediate supervisor? Give name, job title, Race;

7.     Who else worked for your immediate supervisor? Give names, job titles, Race; for each person;

8.     What do you want to happen as a result of filing your charge?

9.     List any witnesses you may have. Witnesses are persons who can support or have first-hand knowledge of the allegations in your charge. Witnesses are NOT character references. Witnesses are not contacted during the screening process. Therefore, it is very important you tell us in detail what each witness would tell us, if contacted, during an investigation. Identify each witness by:
    a.     Name
    b.     Home address
    c.     Home telephone number
    d.     Relationship to you (co-worker, friend, relative, etc.)
    e.     What did the witness see, hear, or experience that would support any of your allegations? Be specific, don't just say "they can tell you what happened."

10.     Provide your e-mail address if you have one.

Charge No. [illegible]
Page [illegible]

[illegible paragraph] ... Respondent ... disclose Please [illegible] ...

[illegible]. Retaliation

[illegible]. [illegible]

    a.    [illegible] charge against Respondent? If so, what [illegible] the charge? Give [illegible] matter.

    b.    [illegible] or someone else's [illegible] discrimination? If so [illegible] [illegible] dates and names of the persons involved.

    c.    oppose a discriminatory [illegible] or refuse to participate in discrimination [illegible] [illegible] the workplace? If yes, explain, and include the following information:

        i.    To whom did you complain? Give dates, names and positions of those

        ii.    Was your complaint oral or written? If written, include copies [illegible] of your [illegible] [illegible]

        iii.    What specifically, did you complain about?

        iv.    What response did the Respondent make to your internal complaint?

[illegible]. What [did the] Respondent know about your involvement in any of the above? Give names and position. How did [they] know? When did they find out?

How were you retaliated against for your involvement in the above? In other words, what [happened] to you as a result of your involvement? Be specific. Include dates, names [and] [illegible] of persons involved.

[illegible]. Why [do] you [believe] your participation in a protected activity was a factor in the way you were [treated]? Explain.



ILLINOIS DEPARTMENT OF
**Human Rights**

JB Pritzker, Governor
James L. Bennett, Director

## CREDIBILITY NOTICE

### The Cooper v. Salazar Injunction

The Illinois Department of Human Rights (IDHR) is under a federal court injunction that, among other things, orders the IDHR:

To cease permanently, from relying on credibility determinations made without affording the rights of confrontation and cross-examination.

See, Cooper v. Salazar, #98 C 2930, U.S. District Court for the Northern District of Illinois, order dated November 1, 2001 at p. 26 ¶1.

### Meaning of the Cooper Injunction

The IDHR cannot assess the credibility of Complainant's testimony, the testimony of Complainant's witnesses or the testimony of Respondent's representatives or the witnesses of Respondent when there is conflicting testimony. In other words, if the determination of substantial evidence turns on issues of credibility, the IDHR should make a finding of substantial evidence so that a trier of fact may resolve those issues of credibility. This means that if a contradiction of fact, of substantial evidence requires the IDHR to make a finding of fact as to conflicting evidence, the IDHR will make a finding of substantial evidence so that credibility may be resolved by the Human Rights Commission at a Public Hearing.

The Illinois Human Rights Act defines 'substantial evidence' as:

"Evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance". Illinois Human Rights Act §7A-102(D)(2), codified at 775 ILCS 5/7A-102(D)(2).

### The Meaning of Credibility

The Illinois Department of Human Rights is an investigatory agency. The IDHR's purpose is to gather all of the evidence from each of the parties as to whether Respondent may or may not have discriminated against the Complainant while the making of the Illinois Human Rights Act. The IDHR's purpose is to review all of the evidence and make a determination based upon one law as to whether there is sufficient evidence of discrimination to file a complaint against the Respondent with the Illinois Human Rights Commission. The IDHR will not make a finding that evidence submitted by a party is either believable or not believable. Thus, the IDHR will not base its findings on the fact that one of the parties is not telling the truth, or that one party's evidence is not believable. If the resolution of the charge of discrimination requires believing the evidence of one party over another party, the IDHR will make a finding of Substantial Evidence and refer the matter to the Illinois Human Rights Commission so that a trier of fact may resolve the case.

### Conflicting evidence exists when there are:

1) Statements of a person with material firsthand knowledge contradicted by statements of a different person with material firsthand knowledge.
2) Business records contradicted by oral statements of a person with material firsthand knowledge.
3) Business records of one person contradicted by business records of another person.

By the authority of the State of Illinois (22120136 IEN6 Charge Processing)



EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Kimberly Long**<br>        Kim_long1982@yahoo.com | From:  **St. Louis District Office**<br>           **1222 Spruce St, Rm 8100**<br>           **St Louis, MO 63103** |

| EEOC Charge No.<br>**560-2022-02246** | EEOC Representative<br>**Cynthia Basile,**<br>**Investigator** | Telephone No.<br>**3147981920** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

   Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

   The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS *of your receipt of this Notice.* Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Catherine A. Welker**  Digitally signed by Catherine A. Welker
Date: 2023.01.14 15:30:43 -06'00'

p.p.

Enclosures(s)

**David Davis**
**Acting District Director**

cc:   **Larry J Weinsteen**
       **Walmart Associates, Inc. c/o Littler Mendelson, P.C.**
       walmartcharges@littler.com

       **Lauren S Kruskall**
       **Jungle Law**
       lauren@junglelaw.com



Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court __under Federal law__.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this** Notice was *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA and GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this** Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

STATE OF ILLINOIS )
                  ) ss.
COUNTY OF COOK    )                    CHARGE NO 2023SR0731

## AFFIDAVIT OF SERVICE

_____ P. Arthur _____ deposes and states that she served a copy of this _____

**NOTICE   OF   DISMISSAL   AND   ORDER   OF   CLOSURE** _____ which _____

_____ on _____ February _____, 2023 _____

_____ Monroe   Street   Chicago,   Illinois   properly _____

or   FIRST   CLASS MAIL   addressed as follows:

**For Complainant**

Lauren S. Russell
_____
1300 Main St.
Suite 800
Kansas City, MO 64105

**For Respondent**

Larry J. Weinstein
Littler Mendelson, P.C.
2301 McGee St.
Suite 800
Kansas City, MO 64108

_____ provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the _____ the statements set forth in this instrument are true and correct, except _____ to _____ stated to be on information and belief and as to such matters the undersigned _____ _____ _____ believes the same to be true.

_____
Christina P. _____

## PLEASE NOTE:

The above-signed person is responsible only for mailing these documents. The Department of Human Rights' staff are not permitted to discuss the _____ proceedings once a Notice of Dismissal or Order of Closure has been issued.

**EXHIBIT**

**7**

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:
KIMBERLY LONG.

COMPLAINANT    )    CHARGE NO    2023SR0731

AND

WAL-MART ASSOCIATES, INC

RESPONDENT.    )

### NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE AND ORDER OF CLOSURE

For Complainant

Lauren S. Kruskall
Jungle Law
2300 Main St.
Suite 900
Kansas City, MO 64108

For Respondent

Larry J. Weinsteen
Littler Mendelson, P.C.
2301 McGee St.
Suite 800
Kansas City, MO 64108

DATE OF DISMISSAL. February 8, 2023

1.    YOU ARE HEREBY NOTIFIED that the Department has not received a timely request to review the EEOC determination of no cause, a copy of which is enclosed. Based upon the enclosed determination, the DEPARTMENT OF HUMAN RIGHTS (DHR) finds that there is NOT substantial evidence to support the allegations of the charge(s). Accordingly, pursuant to Section 7A-102(A-1) (3)(a) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code, Chapter II, Section 2520.560), the charge is HEREBY DISMISSED and CLOSED.

2.    Complainant may commence a civil action against Respondent in the appropriate state circuit court or other appropriate court of competent jurisdiction within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC)** immediately: EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3    Complainant is hereby notified that the charge(s) are dismissed with prejudice with no right to further proceed if a timely written complaint is not filed with the appropriate circuit court.

DEPARTMENT OF HUMAN RIGHTS

EEOC Ref Chg (CR)
SRi Rev, 07/2021

Human Rights

[illegible]

K[illegible]
[illegible]
[illegible]
[illegible]
[illegible]

RE: Charge No.: 2023SR072
Respondent: [illegible] ASSOCIATES, INC
Complainant Civil Action Filing Dates: 1/14/2024 through 4/12/2024

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ("EEOC") investigated by the Illinois Department of Human Rights ("IDHR") under the Illinois Human Rights Act. IDHR has received a copy of EEOC's determination and your request for the Department to investigate. A copy of the charge has been served on the Respondent. Keep this letter for reference if you need to telephone or come to IDHR.

[illegible] required to preserve and maintain all records, including paper, electronic, or other formats, [illegible] to this charge. If your charge involves the basis of disability, IDHR requires that two additional [illegible] completed to determine whether IDHR has jurisdiction over your identified medical condition. If [illegible] have copies of these documents in your file, we have included copies with this notice.

1. Verification of Disability.
[illegible] give the Verification of Disability form to your physician for completion. Request your physician [illegible] the completed form by mail to IDHR's address below within 30 days of your receipt of this notice [illegible]

2. Consent form.
The consent form allows IDHR to review your physician's documentation. Please fill out the consent form and return it to IDHR, again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent [illegible] [illegible] and are not enclosed.

[illegible] is to conduct a neutral investigation of the allegations in your charge. [illegible] [illegible] IDHR's investigation and provide all pertinent information you have [illegible] [illegible]

[illegible] IDHR must complete its investigation [illegible] [illegible] findings [illegible] days [illegible] the EEOC issued it decision [illegible] [illegible] Respondent agree in writing.

## CHARGE OF DISCRIMINATION

### ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

DocuSign Envelope ID: ...

confused why they were even making this an issue... all they needed to do was call Moneygram to try and verify things.

I felt like I was being set up. Then on April 12 I spoke with my coworker Zack about what happened. He told me that the exact same printer issue had happened to him in March, but he didn't receive a write-up... not even a coaching. Zack happens to be white and much younger than I.

I was told that because I would not sign the write-up, I was out of the running for the team lead position. This made me extremely upset, as I liked it, camped in with Coach Eric.

On May 14 I was called to the office by my team lead. Eric and McKaila were also there. Eric told me that him from accounting said that I couldn't work in the money center or ran any cash register anymore. They showed me a picture of money balled up in what accounting claimed was my hand. I didn't recall having money in my hand or a photo taken, and I felt ambushed. I was then told I could only work in self-check, or carts.

On the afternoon of May 19 I texted my cousin Dawn Triplett who also worked at the same Walmart. She had been experiencing similar discriminatory issues. I told her I had been asked to go to the manager's office, and I felt like I was about to be fired. When I arrived at the office, him, Eric and my team lead were present. Eric showed me photos of transactions completed under my operator number. I was accused of giving extra money out. I asked to see video footage of me allegedly giving out extra money, but they would not show me. Allegedly an accounting partner witnessed me.

I was told my drawer had shortages at up to $5,000. I responded that I had never turned in a short drawer without an explanation. I was always transparent when there were discrepancies. Eric told the others this was true...that I always counted my drawer. So then accounting changed tactics and claimed I wasn't following my Walmart teachings...I didn't know what "teachings" were being referred to, as I wasn't given any specifically.

Ignoring my protests, Walmart said that instead of calling the police, I was just fired. I don't think anybody was actually going to call the police, because everyone in the room knew no crime was committed... but they threatened me to scare me...and it worked.

I handed Eric my badge and discount card. I asked him for my last paycheck which is customarily handed to an employee when terminated. They told me my check wasn't ready and I would get a call. I finally got my check on May 23 and was told it had been waiting for me since the 19th when they fired me. This felt like retaliation and mental games because I had originally been told I could not have the check that day.

Here are some specific examples of other employees in my position who have had short drawers, but did not get coaching, write-ups, or termination. They are all white.

-Rebecca did an over-the-phone transaction for over $5,000 but nothing happened to her. This amount is over Walmart's policy.



Charge Number: 2023360173        Complainant: KIMBERLY LONG

Respondent: WALMART ASSOCIATES, INC.

## COMPLAINANT QUESTIONNAIRE

In order to assist the IDHR in investigating your charge, please complete and return the following questionnaire to the IDHR within 30 days of the date you received this questionnaire.

- If you are represented by an attorney, consult with your attorney prior to completing the questionnaire.
- Provide your answers on a separate sheet of paper. Identify the question number for each response. Use additional sheets as necessary.
- If you are not sure of the answer to any question, you may leave the question blank, and the investigator will follow up with you at a later time.

Provide a copy of any documents (such as letters, journals, emails, or other evidence) which relate to the charge allegations.

1.    Provide information about Respondent:
   a.    State the full legal name(s) as identified on your W-2 form;
   b.    Address of Respondent;
   c.    Briefly Describe the type of work carried on by Respondent at this address.

2.    On what date did you start working for Respondent?

3.    Who hired you? Give name, job title, Age; Race;.

4.    Please list in chronological order each position you held at the Respondent and the date you started in that position.

5.    What were the job duties in the position you held on the date of the incident? Please include a job description if you have one.

6.    Who was your immediate supervisor? Give name, job title, Age; Race;.

7.    Who else worked for your immediate supervisor? Give names, job titles, Age; Race; for each person

8.    What do you want to happen as a result of filing your charge?

9.    List any witnesses you may have. Witnesses are persons who can support or have firsthand knowledge of the allegations in your charge. Witnesses are NOT character references. Witnesses are not contacted during the screening process. Therefore, it is very important you tell us in detail what each witness would tell us, if contacted, during an investigation. Identify each witness by:
   a.    Name
   b.    Home address
   c.    Home telephone number
   d.    Relationship to you (co-worker, friend, relative, etc.)
   e.    What did the witness see, hear, or experience that would support any of your allegations? Be specific, don't just say "they can tell you what happened."

10.    Provide your email address if you have one.



# CREDIBILITY NOTICE

**The Cooper v. Salazar injunction**

[illegible text]

**Meaning of the Cooper Injunction**

[illegible text]

The Cooper injunction requires the IDHR to accept as substantial evidence of bias.

[illegible] which the trier of fact accepts as reliable to support a particular conclusion and which is proof of the fact in issue although it may be somewhat less than a preponderance. Illinois Human Rights Act (775 ILCS 5/7A-102(D)(3)).

**The Meaning of Credibility**

[illegible text]

**Conflicting evidence exists when there are:**

[illegible text]

[illegible] Illinois Human Rights Act (775 ILCS 5/8A-103) [illegible]

[illegible text at bottom]



EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Dawn Triplett**
    **1710 Baxston Court**
    **Swansea, IL 62226**

From: **St. Louis District Office**
    **1222 Spruce St, Rm 8 100**
    **St Louis, MO 63103**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **560-2022-02070** | **Brenda Rutledge,**<br>**Investigator Support Assistant** | **3147981916** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    More than 180 days have passed since the filing of this charge.

    The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**LEATHA JOHNSON** Digitally signed by LEATHA JOHNSON
Date: 2023.01.13 13:40:40 -06'00'

Enclosures(s)

**For David Davis**
**Acting District Director**

cc: **Barry K Baker**
    **Walmart Store 1418 c/o Littler Mendelson, P.C.**
    **2301 MCGEE ST STE 800**
    **Kansas City, MO 64108**
    **Scott A Forman**
    **Walmart c/o Littler Mendelson PC**
    **2301 McGee St Ste 800**
    **Kansas City, MO 64108**

    **Lauren Kruskall**
    **Jungle Law**
    **2300 Main St., Ste. 900**
    **Kansas City, MO 64108**



**EXHIBIT**

8

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10 – not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

STATE OF ILLINOIS      )
                       )  ss
COUNTY OF COOK         )

CHARGE NO. 2022SR2311

## AFFIDAVIT OF SERVICE

Christina P. Am, my deposes and states that she served a copy of the attached NOTICE OF DISMISSAL AND ORDER OF CLOSURE on each of the named parties by depositing the same on February 8, 2022, in the United States Mail Box, at 555 West Monroe Street, Chicago, Illinois, properly addressed for FIRST CLASS MAIL, addresses as follows:

For Complainant

Lauren B. Krushad
Juncan Law
2500 Main St.
Suite 9th
Kansas City, MO 64108

For Respondent

Scott Forman
Littler Mendelson
2301 McGee St.
Suite 800
Kansas City, MO 64108

I, the affiant, declared as pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Christina P. Am

## PLEASE NOTE:

The above signed person is responsible only for mailing these documents out. The Department of Human Rights' staff are not permitted to discuss the merits of the filings once a Notice of Dismissal or Order of Closure has been issued.

**EXHIBIT**

**9**

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

IN THE MATTER OF:
DAWN TRIPLETT

                COMPLAINANT     )  CHARGE NO    2022SR/ ¹ ¹ ¹

AND

WAL-MART

                RESPONDENT,

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE**
**AND ORDER OF CLOSURE**

For Complainant

Lauren S. Kruskall
Jungle Law
2300 Main St.
Suite 900
Kansas City, MO 64108

For Respondent

Scott Forman
Littler Mendelson
2301 McGee St.
Suite 800
Kansas City, MO 64108

DATE OF DISMISSAL: February 8, 2023

1.    YOU ARE HEREBY NOTIFIED that the Department has not received a timely request to review the EEOC determination of no cause, a copy of which is enclosed. Based upon the enclosed determination, the DEPARTMENT OF HUMAN RIGHTS (DHR) finds that there is NOT substantial evidence to support the allegations of the charge(s). Accordingly, pursuant to Section 7A-102(A-1) (3)(a) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code, Chapter II, Section 2520.560), the charge is HEREBY DISMISSED and CLOSED.

2.    Complainant may commence a civil action against Respondent in the appropriate state circuit court or other appropriate court of competent jurisdiction within ninety (90) days after receipt of this Notice. A complaint should be filed in the circuit court in the county where the civil rights violation was allegedly committed. **If you intend to exhaust your State remedies, please notify the Equal Employment Opportunity Commission (EEOC) immediately:** EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604.

**Please note that the Department cannot provide any legal advice or assistance. Please contact legal counsel, your city clerk, or your county clerk with any questions.**

3.    Complainant is hereby notified that the charge(s) are dismissed with prejudice with no right to further proceed if a timely written complaint is not filed with the appropriate circuit court.

DEPARTMENT OF HUMAN RIGHTS

EEOC Ref Chg (CR)
CR; Rev. 07/2021



ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

January 27, 2023

DAWN TRIPLETT
c/O LAUREN KRUSKALL
JUNGLE LAW
2300 MAIN ST., STE. 900
KANSAS CITY, MO 64108

RE:   Charge No.: 2023SR2311
Respondent: WALMART ASSOCIATES INC
Complaint or Civil Action Filing Dates: 1/13/2024   through   4/11/2024

Dear Complainant:

You have chosen to have the discrimination charge you previously filed with the U.S. Equal Employment Opportunity Commission ('EEOC') investigated by the Illinois Department of Human Rights ('IDHR') under the Illinois Human Rights Act. IDHR has received a copy of EEOC's determination and your request for the Department to investigate. A copy of the charge has been served on the Respondent. Keep this letter for reference if you need to telephone or come to IDHR.

You are required to preserve and maintain all records, including paper, electronic, or other formats, pertaining to this charge. If your charge involves the basis of disability, IDHR requires that two additional forms be completed to determine whether IDHR has jurisdiction over your identified medical condition. If we do not have copies of these documents in your file, we have included copies with this notice.

1)   Verification of Disability.
Please give the Verification of Disability form to your physician for completion.  Request your physician return the completed form by mail to IDHR's address below within 30 days of your receipt of this notice; and

2)   Consent form.
The consent form allows IDHR to review your physician's documentation.  Please fill out the consent form and return it to IDHR again, within 30 days of your receipt of this notice.

If your charge does not involve the basis of disability, then the Verification of Disability and Consent Forms are not needed and are not enclosed.

IDHR's role is to conduct a neutral investigation of the allegations in your charge.  It is your responsibility to cooperate with IDHR's investigation and provide all pertinent information you have concerning the case by the dates requested.

An investigator will contact you after the case is assigned. IDHR must complete the investigation of your case by issuing its report of findings within 365 days from the date the EEOC issued its decision on your charge.  IDHR's investigation time may be extended if you and Respondent agree in writing.

If IDHR does not complete the investigation of your case by [illegible] or [illegible] to report of [illegible] you may either file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court within 90 days after the expiration of the 365 days for the extended time). We have cautioned you the time above listed Complaint or Civil Action Filing Safety. When we have made this [illegible] would answer the best of [illegible] [illegible]. The Human Rights Commission has ruled that [illegible] [illegible] possibility to [illegible] the number of days properly. If you file a complaint a civil action [illegible] action in a circuit court outside the 90-day period, your complaint or civil action may be dismissed unless [illegible]

Once 365 days (365 days or the extended time) the 365 days have passed, IDHR [illegible] of your charge with the [illegible] [illegible] further right to proceed if you have not filed a complaint with the Human Rights Commission [illegible] appropriate court. Therefore, you may wish to [illegible] an attorney to determine the best way for you to [illegible] your case.

If you file a complaint with the Human Rights Commission, the form of the complaint must be in accordance with Provision 7A-102(F) of the Human Rights Act. You will receive a copy of the complaint filed with the Human Rights Commission on IDHR on the same day that you file a complaint with the Commission. The Human Rights Commission will then schedule a hearing for your case before an Administrative Law Judge.

If you commence a civil action in circuit court, the form of the complaint must be in accordance with the [illegible] Rules of Civil Procedure. Please also serve a copy of your complaint on the EEOC, 500 West Madison Street, Suite 2000, Chicago IL 60661. If you file a complaint with the Commission, you may not commence a civil action in circuit court.

[illegible] IDHR of a changes of name, address, or telephone number. If you to not do so, IDHR may [illegible] [illegible] [illegible]

[illegible]
[illegible]
[illegible]

## CHARGE OF DISCRIMINATION

### ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

NAME
Dave Tolson

STREET ADDRESS
Swansea IL 62226

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE

NAME
William A Randolph, Inc

STREET ADDRESS
W Highway 50          O'Fallon, IL 62269

CAUSE OF DISCRIMINATION BASED ON
SEX   [X] RELIGION   NATIONAL ORIGIN   RETALIATION   AGE   DISABILITY   OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
December, 2020 — June, 2022

DocuSign Envelope ID: 2DEBEEB1-2105-44A2-84C8-7B3890807AF9

My name is Dawn Triplett and I have worked for Walmart Associates, Inc. since April 10, 2007. I started as an Optician in the Vision Department on December 18, 2020. The vision department was hard for me to get accepted into, so I was very pleased when it finally happened.

I am of mixed race, including African-American.

On Wednesday, January 20, 2021, I used a boxcutter to open a box and then unloaded the box. I hadn't put the boxcutter away yet, when an older white employee named Diane picked up the boxcutter and threw it at me. She exclaimed, "Hey, you can get hurt with it!" I didn't report Diane because other employees, including supervisors, saw what happened. But nobody said anything. Not knowing what to do, I let it go.

Over the course of the next year, Diane made various racist jokes and created unnecessary tension. When I reported Diane, I was told, "That's how Diane is," excusing her behavior instead of addressing it.

I enjoyed my job, and I had worked hard to get it, so I tried to ignore Diane the best I could. But then Diane would take pictures of me and send them to our supervisor Jana. She was trying to get me into trouble so I would not be able to work with her in the department any longer.

Jana tried to write me up for whatever reasons Diane tried to create, but I refused to sign the write-ups. Jana and Diane had worked together a long time, and seemed to have the same beliefs about things. Jana chose to ignore Diane's frequent, racist comments.

Diane knows that I study Islam, and brings it up to me in a negative way almost daily. When I greet another Muslim employee, Diane will say "Muslims are prisoners. My friend is in prison and all the Black people are Muslim."

Sometime in March of 2022, I set down my Android phone and Diane threw it at me. Jana witnessed this, but did not react at all. I reminded Jana this was the second time Diane threw something at me...the first time it had been a knife.

**Jana** talked to Diane about it. Diane apologized to Jana, but not to me. I was super upset and just stood quietly thinking about what to do. Jana baited me. "She apologized, (to me) so aren't you going to let it go?"

Jana started in on the racist commentary. One day, a man from Sudan or Somalia who had very dark skin came inside Walmart. He stood in the bank line, which was quite long that day. Jana said, "He's BLACK black." Diane chimed in, "Well, you know what we do with black – we use them until we can't use them no more, then we just throw them away."

My Black co-worker Tamika and I immediately both told Diane and Jana to cease talking about Black people in that way.

I asked Jana for a meeting about it, but she refused. Jana said she wasn't a racist and she had just been joking around. I said it wasn't a joke, and she has made my co-workers and I uncomfortable.

It didn't matter. Jana and Diane seemed to take pleasure in the fact that we were upset. They

DocuSign Envelope ID: 2DEBEEB1-21D5-44A2-B4C6-78X6BD4D7AF9

increased their racist comments about Blacks, muslims, who they assumed were all muslims, poor, prisoners and on food stamps.

One day Diane was talking about a patient named Elgin. Elgin is a white man who is very kind. Diane claimed Elgin specifically asks for me to work with him, because "he likes mocha" referring to the color of my skin. Taken aback, I responded, "No, he likes me because I'm friendly, I have a pretty smile, and I am nice." I told Diane that I have a lot of patients who ask for me because of my demeanor, not because of my skin color.

Diane is not nice to Elgin, or other patients, which is probably why they don't want to work with her. Diane claimed that Elgin drove a Hummer, but he has Medicaid, so he must be gaming the system.

Jana often discredits the Belleville store's vision center to us. She doesn't like the manager Sam, and frequently reminds us that Sam's baby daddy is Black. Jana specifically told us to not do any refunds, replacements, or anything for Belleville patients.

Both Diane and Jana have also discriminated specifically against Medicaid recipients. They claim we can't book more than four Medicaid patients per day, and we have to turn them away for replacement glasses when they ask. We are also not allowed to give them free eyeglass cleaning kits.

Jana would often invade my personal space and pat me on the back like a dog. I told her to stop touching me like that because it made me feel like a dog. She keeps doing it. When I complain, it encourages her to do things more often.

After I complained, Jana cut my hours. I asked Terrance for more hours, and he said I could work in electronics.

On May 11th I was working in the electronics department. My patients know me well by now, and one of them named Scott Rogers asked if I could see what's up with his glasses. I said I would check for him. I asked my coworker Jackie, because Scott had been waiting on them a long time. Jackie said Diane was still working on them. So I went to the lab with Tamika to check. I noticed one of his screws was lost, and we were going to be responsible for it.

I asked Diane how she was doing and if she wanted me to try working on Scott's glasses. Diane threw the glasses at me, and I had to duck to avoid being hit. As a result, the glasses hit a hard surface and chipped. I fixed them promptly for Scott, and then I called the police. I told them I was assaulted. I also told Terrance the store manager, and other managers under him. They watched security footage of the incident, which Diane admitted to, but Diane tried to claim she hadn't thrown them that hard.

Tamika and I both made statements. I gave mine to Terrance, store lead Aimee, coach Shanna, as well as manager Anitra. I was told I couldn't say anything to anyone, as an investigation was ongoing. Terrance called Jana into his office. She was crying at the time.

I no longer felt comfortable working in vision. Terrance said I could float around I and help where needed. I liked the vision center, so why did I have to move? What about Diane and Jana?

On May 12th I again worked in electronics. I wrote a second statement about the on-going racial

DocuSign Envelope ID: 2D9E9CEA1-21D5-44A3-9A05-7U3890407AF9

discrimination by both Diane and Jana.

On May 13th I went to clock in. Jana and Tamika were discussing the investigation, even though Terrance told us not to. I got emotional and Jana claimed she was sorry. She tried to hug me, but I didn't want her to touch me and I started crying. I witnessed Jana then tell a patient to wait, because she was more interested in discussing the investigation than helping customers. I went to the lab to dab my eyes so I could work, and Jana followed me and kept trying to engage me about the investigation, and I told her to stop. She wanted me to re-enact when Diane threw the glasses at me.

I told Terrance that Jana was trying to talk to me about the investigation and she wouldn't let me get to work. I asked to go home. I needed the hours, so I ended up working in Lawn & Garden that day.

Jana got upset when Terrance approached her. Afterwards, she found Tamika and I. She told us to "find a picture of a sad monkey for Terrance, as that's what he reminds me of and that's what he is." Terrance is Black.

On May 14th I was notified through my app that I was removed from the following week's schedule. I was supposed to work Monday-Thursday, May 16th – 19th. No one said a word to me about the removal. Diane was still on the schedule.

I went to talk to Terrance. I asked if I had been fired. He said no.

The following schedule was for May 21st – 27th. I was given only seven hours, while Diane had 31.75. Then on May 28th -June 3rd, I was completely off the schedule, while Diane had 36.25 hours. Then on June 4th -10th, I was given 22 hours, while Diane got 36.75.

I am embarrassed and hurt. I've worked for Walmart for a long time and I am a team player, so much so that I've been helping in other departments even though I don't have to. But I was forced out of the position I worked so hard to achieve, and nothing happened to my co-worker Diane.

I have been discriminated against based on my race and religion. After reporting the harassment, I was retaliated against and my hours were cut. But I am hopeful that we can come to some sort of resolution with the company and make positive changes going forward.

I am represented by the following Counsel

Lauren Sierra Kruckali
Attorney at Jungle Law
2300 Main St, #900
Kansas City, MO 64108
o. #816-448-3107
f. #816-448-3101
c. #816-944-3660

DocuSign Envelope ID: 2DEDEE81-21D5-44A3-B4C8-7B369D8DJ7AF9

I want this charge filed with both the EEOC and the state or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary to meet State and Local Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

6/16/2022

_Dawn Zirpkett_

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, and year)

_Dawn Zirpkett_

6-16-2022

Charge Number: _____   _____ DAVIS TRIPLETT

Respondent: WALMART ASSOCIATES IN

## COMPLAINANT QUESTIONNAIRE

In order to assist the EEOC's investigation _____ objective questionnaire with EEOC within 30 days of the ____ received it is not _____

- In answering to each _____ in attaching _____ with ____ at ____ prior to completing this
- If using a separate sheet or paper, identify the question number for each response. If you need to attach a necessary.
- If you _____ answer to any question, you may leave the question blank ____ and the _____ will help you with your answer at a time.

____ identify any of any documents such as letters, journals, emails or other evidence, which related the charge allegations.

1. Provide information about Respondent.
   a. State the full legal name(s) (as identified on your W-2 form).
   b. Address of Respondent.
   c. Briefly Describe the type of work carried on by Respondent at this address.

2. On what date did you start working for Respondent?

3. W____ Hired you? Give name, job title, Religion, Race?

4. Please list in chronological order each position you held at the Respondent and the dates you held in each position.

5. What were your duties in the position you held on the date of the incident? Please include a job description if you have one.

6. Who was your immediate supervisor? Give name, job title, Religion, Race?

   Who else worked for your immediate supervisor? Give names, job titles, Religion, Race; for each _____

7. _____ supporting your charge.

   _____ these _____ you may have, for instance, the persons who can support your _____ class of _____ knowledge of the allegation in your charge. Witnesses are NOT character references. Witnesses were _____ during the _____ position. Therefore, it is very important you tell us about _____ Each witness can tell us the _____ during the investigation. Identify each witness _____
   a. Name
   b. Home address
   c. Home telephone number
   d. Religion Ship to you (e.g.) witness, friend, relative, etc.)
   e. What did the witness _____ for experience that would support your _____ _____ _____ simply don't just say "they can tell us what happened."

8. Provide your email address or postal address

Charge No. 5[illegible]

Page [illegible] of 3

Circle Basis of Harassment:

13. Identify the [illegible] by name, position, Race, Race, age, workers'[?] relationship with

14. List the several instances of the alleged harassment. Include dates on which such [illegible] occurred. In the event [illegible] is more than once of the [illegible] than the conduct is stated [illegible] conduct of [illegible].

15. Did you complain about the harassment to anyone within the company? If yes, give their:

   a.    Name

   b.    Position title

   c.    Date of complaint.

16. Was any action taken because of your complaint?

17. Why do you think the alleged harasser(s) engaged in this conduct toward you? Explain.

18. Did anyone else witness any of the incidents of harassment that happened to you? If so, provide their name(s), position, and a description of what each person saw or heard.

19. Did the same alleged harasser subjected any other employees to this same type of conduct or behavior? If yes, who? Explain in detail, including date(s), name(s), and position(s):

20. Does the Respondent have an anti-harassment policy? If yes, explain your understanding of the policy.

21. If you did not report the harassment, state the reason why you did not.

22. [illegible] Do you have any items or documents that evidence the harassing conduct? If so, please provide copies.

Identify Basis of Retaliation:

23. Prior to the alleged retaliation did you:

   a.    File a previous charge of discrimination against Respondent? If yes, with whom did you file the charge? Give date and charge number.

   b.    Assist, witness, or testify in someone else's charge of discrimination? If yes, explain. Include dates and name(s) of the persons involved.

         Oppose a discriminatory action [illegible] to participate in discrimination activity [illegible] the workplace? If yes, explain and include the following information:

         i.    To whom did you complain? Give dates, names and position titles.

         ii.   Was your complaint oral or written? If written, include copies of all [illegible] [illegible] [illegible] the action.

         iii.  When [illegible] did you complain [illegible]?

         iv.   What action did the Respondent [illegible] against an internal complaint.

24. When respondent [illegible] [illegible] [illegible] adverse action in any of your protected activities [illegible] [illegible]? How did they learn? When did they find out?



**ILLINOIS DEPARTMENT OF**
# Human Rights

**JB Pritzker, Governor**
James L. Bennett, Director

## CREDIBILITY NOTICE

### The Cooper v. Salazar injunction

The Illinois Department of Human Rights (IDHR) is under a federal court injunction that, among other things, orders the IDHR

To cease permanently from relying on credibility determinations made without affording the rights of confrontation and cross-examination.

See, Cooper v. Salazar, #98 C 2930, U.S. District Court for the Northern District of Illinois, order dated November 1, 2001, at p. 26, ¶1.

### Meaning of the Cooper injunction

The IDHR cannot assess the credibility of Complainant's testimony, the testimony of Complainant's witnesses or the testimony of Respondent's representatives or the witnesses of Respondent where there is conflicting testimony. In other words, if the determination of substantial evidence turns on issues of credibility, the IDHR should make a finding of substantial evidence so that a trier of fact may resolve those issues of credibility. This means that if a determination of lack of substantial evidence requires the IDHR to make a finding of fact as to conflicting evidence, the IDHR will make a finding of substantial evidence so that credibility may be resolved by the Human Rights Commission at a Public Hearing.

The Illinois Human Rights Act defines 'substantial evidence' as:

Evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance'. Illinois Human Rights Act §7A-102(D)(2), codified at 775 ILCS 5/7A-102(D)(2).

### The Meaning of Credibility

The Illinois Department of Human Rights is an investigatory agency. The IDHR's purpose is to gather all of the evidence from each of the parties as to whether Respondent may or may not have discriminated against the Complainant within the meaning of the Illinois Human Rights Act. The IDHR's purpose is to review all of the evidence and make a determination based upon the law as to whether there is sufficient evidence of discrimination to file a complaint against the Respondent with the Illinois Human Rights Commission. The IDHR will not make a finding that evidence submitted by a party is either believable or not believable. Thus, the IDHR will not base its findings on the fact that one of the parties is not telling the truth or that one party's evidence is not believable. If the resolution of the charge of discrimination requires believing the evidence of one party over another party, the IDHR will make a finding of Substantial Evidence and refer the matter to the Illinois Human Rights Commission so that a trier of fact may resolve the case.

### Conflicting evidence exists when there are:

1) Statements of a person with material firsthand knowledge contradicted by statements of a different person with material firsthand knowledge.
2) Business records contradicted by oral statements of a person with material firsthand knowledge.
3) Business records of one person contradicted by business records of another person.

By the authority of the State of Illinois (2212a13ENGChargeProcessing)

555 West Monroe Street 7th Floor, Chicago, IL 60661 (312) 814-6200, TTY (866) 740-3953 Housing Line (800) 662-3942.
524 S. 2nd Street, Suite 300, Springfield, IL 62701 (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

ILLINOIS DEPARTMENT OF
# Human Rights

# STATE OF ILLINOIS,
# CIRCUIT COURT

FOREIGN SUMMONS

*For Court Use Only*

05/12

St. Clair **COUNTY**

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | Kimberly Long, et al <br> **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. |
| Enter the names of all people you are suing as Defendants/ Respondents. | WalMart Inc. <br> **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**23LA0371**
**Case Number**

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/. <br><br> E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org. <br><br> Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help. <br><br> If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:** <br>    a. Defendant/Respondent's primary address/information for service: <br>      Name *(First, Middle, Last):* WalMart Inc <br>      Registered Agent's name, if any: CT Corporation System <br>      Street Address, Unit #: 208 SO LaSalle Street Suite 814 <br>      City, State, ZIP: Chicago, IL 60604 <br>      Telephone: _____ Email: _____ |
| In 1b, enter a second address for Defendant/ Respondent, if you have one. |    b. If you have more than one address where Defendant/Respondent might be found, list that here: <br>      Name *(First, Middle, Last):* _____ <br>      Street Address, Unit #: _____ <br>      City, State, ZIP: _____ <br>      Telephone: _____ Email: _____ |
| In 1c, check how you are sending your documents to Defendant/ Respondent. |    c. Method of service on Defendant/Respondent: <br>      ☑ Sheriff    ☐ Sheriff outside Illinois: _____ <br>                                         *County & State* <br>      ☐ Special process server    ☐ Licensed private detective |

| In 2, enter the amount of money owed to you. | **2.** | **Information about the lawsuit:** |
| | | Amount claimed:   $ 50,000.00 |

| In 3, enter your complete address, telephone number, and email address, if you have one. | **3.** | **Contact information for the Plaintiff/Petitioner:** |

Name (First, Middle, Last):   Breanna L. Flowers

Street Address, Unit #:   110 E. Lockwood Ave.

City, State, ZIP:   St. Louis, MO 63119

Telephone:  314-373-6315          Email:    flowers@onderlaw.com

---

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

---

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** | **Instructions for person receiving this *Summons* (Defendant):** |

☑  a.   To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:

Address: _____

City, State, ZIP: _____

| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. |

☐  b.   Attend court:

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
        *Date*                      *Time*                                          *Courtroom*

**In-person at:**

_____
*Courthouse Address*          *City*                          *State*        *ZIP*

OR

| In 4b, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. |

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

By telephone: _____
                       *Call-in number for telephone remote appearance*

By video conference: _____
                                *Video conference website*

_____
*Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk at: _____ or visit their website
                                      *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
        *Website*

---

| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____4/12/2023_____<br>                                        Nora Sternau | [seal] | of Court |

**Clerk of the Court:** _____

| **STOP!**<br>The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of the witness date.** |

Date of Service: _____
                          *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

St. Clair _____ COUNTY

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | Kimberly Long, et al | |
| | **Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. | |
| | WalMart Inc. | |
| | **Defendant / Respondent** *(First, middle, last name)* | |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | 23LA0371 _____ **Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
  *First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

  ☐ Personally on the Defendant/Respondent:

  Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____

  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

  Address, Unit#: _____

  City, State, ZIP: _____

  ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

  Address, Unit#: _____

  City, State, ZIP: _____

  And left it with: _____
                    *First, Middle, Last*

  Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____

  and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on _____ , 20 _____ .

  ☐ On the Corporation's agent, _____
                                  *First, Middle, Last*

  Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____

  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

  Address: _____

  City, State, ZIP: _____

DIE DATE
05/12/2023

||||||||||||||||||||||||||||||||
^ 0 3 7 4 1 4 1 6 ^

DOC.TYPE:      SUMMONS
CASE NUMBER:   2023LA0371
DEFENDANT
WALMART INC
208 S LASALLE ST
CHICAGO, IL 60604
814

SERVICE INF
C T CORP SY

ATTACHED

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |
|---|---|

**By:** 

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

*Signature by:*  _____

☐ Sheriff
☐ Sheriff outside Illinois:
_____
*County and State*
☐ Special process server
☐ Licensed private detective

**FEES**
Service and Return:  $ _____
Miles _____    $ _____
Total                       $ 0.00

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

DIE DATE
05/12/2023

DOC.TYPE:    SUMMONS
CASE NUMBER:   2023LA0371
DEFENDANT
WALMART INC
208 S LASALLE ST
CHICAGO, IL 60604
814

SERVICE INF
C T CORP S\

ATTACHED

 **St. Clair County**
I L L I N O I S

🔍  I Want To...

🏠  ›  Departments  ›  Circuit Clerk  ›  Courts  ›  Civil Records

Return to Previous Page

| Case Detail | |
|---|---|
| **Case Number:** 23-LA-0371 | **Presiding Judge:** HON. HEINZ RUDOLF |
| **Case Filing Date:** 03/28/2023 | **Case Type:** TORT MONEY DAMAG OVER $50,000 |
| **Appearance History:** PENDING APPEARANCE: ASSIGN ORD/STAT CONFERENCE - 06/26/2023 at 9:00AM In Courtroom 403 | **Case Status:** OPEN |

| Case Participants (Click on a row for details) | | | | |
|---|---|---|---|---|
| **Participant Name** | **Type** | **Role** | **Status** | **Status Date** |
| RUDOLF, HEINZ | JUDGE | Judicial | Active | 05/01/2023 |
| FLOWERS BREANNA | ATTORNEY | Party | Active | 03/28/2023 |
| WALMART | DEFENDANT PRO SE | Party | Active | 03/28/2023 |
| LONG, KIMBERLY | PLAINTIFF | Party | Active | 04/12/2023 |
| SCOTT, FERN | PLAINTIFF | Party | Active | 04/12/2023 |
| TRIPLETT, DAWN | PLAINTIFF | Party | Active | 04/12/2023 |

| Register of Actions | | | |
|---|---|---|---|
| **Event Date** | **Event Description** | **Party Type** | **Party Name** |
| 05/10/2023 | DOC:SUMMONS RETURNED | ADMINISTRATION | |
| 05/04/2023 | DOC:LETTER | ADMINISTRATION | |
| 05/02/2023 | ORD:ORDER | ADMINISTRATION | |
| 05/02/2023 | ORD:ORDER | ADMINISTRATION | |
| 05/01/2023 | JUDGE REASSIGNED | ADMINISTRATION | |
| 05/01/2023 | ORD:ASSIGNMENT ORDER | ADMINISTRATION | |
| 04/12/2023 | DOC:SUMMONS ISSUED | ADMINISTRATION | |
| 04/10/2023 | DOC:AFFIDAVIT | ADMINISTRATION | |
| 03/28/2023 | DOC:COMPLAINT FILED | ADMINISTRATION | |

Information from this court search is presumed, but not guaranteed, to be accurate. Please contact the Circuit Clerk's office at: CircuitClerk@co.st-clair.il.us with questions about content or accuracy.



**County Office Address**

#10 Public Square
Belleville, IL 62220

**Contact Info**

(618) 277-6600
WEBMASTER@CO.ST-
CLAIR.IL.US

Copyright ©2023 St. Clair County, Illinois. All rights reserved.

Privacy Statement    Terms Of Use